920 A.2d 142 (2007)
392 N.J. Super. 169
STATE of New Jersey, Plaintiff-Appellant/Cross-Respondent,
v.
James THOMAS, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 10, 2007.
Decided April 17, 2007.
*145 Stuart Rabner, Attorney General of New Jersey, for appellant/cross-respondent (H. John Witman, III, Deputy Attorney General, of counsel and on the brief).
Yvonne Smith Segars, Public Defender, for respondent/cross-appellant (Abby P. Schwartz, Assistant Deputy Public Defender, of counsel and on the brief).
Before Judges WEFING,[1] PARKER and C.S. FISHER
The opinion of the court was delivered by
PARKER, J.A.D.
In these cross-appeals, we are presented with two issues involving sentencing under the Brimage[2] Guidelines. The first Brimage issue raised by the State is whether the trial court erred by imposing a lower sentence than that negotiated between the State and defendant pursuant to the Brimage Guidelines and N.J.S.A. 2C:35-12, based on the court's belief that the agreement violated defendant's constitutional rights because it imposed a greater sentence for having invoked his right to a suppression hearing. We hold that the trial court erred in imposing the lesser sentence.
The second Brimage issue, raised by defendant in his second point (and responded to by the State in its third point), is whether the Brimage Guidelines, which were promulgated by the Attorney General to address negotiated-sentence agreements under N.J.S.A. 2C:35-12, violate the principles of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and State v. Natale, 184 N.J. 458, 878 A.2d 724 (2005). We hold that the Brimage Guidelines do not violate the recent cases affecting sentencing.
After his motion to suppress was denied, defendant James Thomas pled guilty pursuant to a Brimage plea agreement to one count of third degree possession of a controlled dangerous substance (CDS) in a school zone, N.J.S.A. 2C:35-7. He was sentenced to a term of five years subject to two and a half years parole ineligibility.
The charges against defendant arose out of an incident that occurred on May 12, 2004 at about 10:00 p.m. on Route 36 in Highlands, a four-lane, divided highway *146 with a grass median. Detective Louis Fundora was driving east on Route 36 in an unmarked car. Fundora observed a Mazda stopped in the westbound passing lane. He saw one man standing at the car and two men walking toward the Mazda in the eastbound lanes. By the time Fundora turned around and approached the Mazda in the westbound lane, all three men were in the car and driving away. Fundora stopped the Mazda on the westbound shoulder.
None of the men in the car had any identification. The driver identified himself as Najee Standard, gave an address and date of birth, all of which proved false. The front seat passenger identified himself as Vernon Valentine and produced a car rental agreement in that name. He also produced four traffic summonses, two in the name of Vernon Valentine and two in the name of Tyrone Whitley, but claimed he didn't know Whitley. Valentine was later identified as Whitley.
Defendant, a back seat passenger, gave his correct name but had no identification and persisted in talking on a cell phone during the stop. After learning that the driver had given incorrect identification, that Valentine was in possession of summonses issued to Tyrone Whitley and that defendant had no identification, Fundora asked Valentine to sign a consent to search because the car was rented in his name. Valentine agreed and a substantial amount of cocaine was recovered.
After the suppression hearing, the trial judge found that Fundora's testimony was credible and that he "had ample reason and articulate suspicion for requesting a consent to search."
In its appeal, the State argues:
POINT ONE
THE BRIMAGE GUIDELINES MEET CONSTITUTIONAL DUE PROCESS STANDARDS
POINT TWO
DETECTIVE FUNDORA WAS JUSTIFIED IN STOPPING THE MAZDA FOR A MOTOR VEHICLE VIOLATION. THEN, AS CIRCUMSTANCES DEVELOPED THROUGH QUESTIONING OF THE OCCUPANTS AND FURTHER OBSERVATIONS, THE DETECTIVE HAD REASONABLE ARTICULABLE SUSPICION TO ASK FOR CONSENT TO SEARCH
POINT THREE
A PLEA OFFER FORMULATED PURSUANT TO THE BRIMAGE GUIDELINES COULD NOT IN ANY CONCEIVABLE APPLICATION EXCEED THE "STATUTORY MAXIMUM" FOR SIXTH AMENDMENT PURPOSES
In his cross-appeal, defendant argues:
POINT ONE
THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE WARRANTLESS SEARCH AND SEIZURE CONDUCTED BY THE POLICE
POINT TWO
SINCE THE BRIMAGE GUIDELINES PROVIDE FOR MANDATORY MINIMUM SENTENCES WHICH ARE BASED ON FACTORS NOT FOUND BY A JURY BEYOND A REASONABLE DOUBT, AND SINCE THESE MANDATORY SENTENCES ARE BINDING ON ALL SENTENCING JUDGES, THEY RUN AFOUL OF THE SIXTH AMENDMENT. THE GUIDELINES MUST THUS BE CONSIDERED AS ADVISORY PROVISIONS THAT RECOMMEND RATHER THAN REQUIRE THE IMPOSITION *147 OF PARTICULAR SENTENCES IN RESPONSE TO DIFFERING SETS OF FACTS, TO BRING THEM INTO CONFORMANCE WITH THE SIXTH AMENDMENT PURSUANT TO UNITED STATES V. BOOKER. FURTHERMORE, THE PRESUMPTIVE SCHEME UPON WHICH THE GUIDELINES ARE BASED DOES NOT CONFORM WITH THE REQUIREMENTS OF STATE V. NATALE, THUS ENTITLING DEFENDANT TO A REMAND FOR RESENTENCING. (Partially Raised Below)

I
N.J.S.A. 2C:35-12 (hereafter section 12) provides the statutory underpinning for the Brimage Guidelines. According to section 12,
Whenever an offense defined in this chapter specifies a mandatory sentence of imprisonment which includes a minimum term during which the defendant shall be ineligible for parole, a mandatory extended term which includes a period of parole ineligibility, or an anti-drug profiteering penalty pursuant to section 2 of P.L. 1997, c. 187 (N.J.S. 2C:35A-1 et seq.), the court upon conviction shall impose the mandatory sentence or anti-drug profiteering penalty unless the defendant has pleaded guilty pursuant to a negotiated agreement or, in cases resulting in trial, the defendant and the prosecution have entered into a post-conviction agreement, which provides for a lesser sentence, period of parole ineligibility or anti-drug profiteering penalty. The negotiated plea or post-conviction agreement may provide for a specified term of imprisonment within the range of ordinary or extended sentences authorized by law, a specified period of parole ineligibility, a specified fine, a specified anti-drug profiteering penalty, or other disposition. In that event, the court at sentencing shall not impose a lesser term of imprisonment, lesser period of parole ineligibility, lesser fine or lesser anti-drug profiteering penalty than that expressly provided for under the terms of the plea or post-conviction agreement.

[Emphasis added.]
This provision was challenged in State v. Vasquez, 129 N.J. 189, 195-97, 609 A.2d 29 (1992), as violating the separation of powers doctrine of our State Constitution, N.J. Const. art. III, paragraph 1, on the ground that it granted too much sentencing power to the prosecutor. In Vasquez, our Supreme Court held that, to avoid constitutional infirmity, section 12 must be interpreted to require a prosecutor to state his reasons on the record for waiving or refusing to waive the mandatory minimum period of parole ineligibility, and to allow relief to a defendant who could clearly and convincingly show that the prosecutor's exercise of discretion was arbitrary and capricious. Id. at 195-97, 609 A.2d 29. Applying the rationale previously applied to a similar challenge to the mandatory extended term provisions of N.J.S.A. 2C:43-6(f), the Court required that guidelines be adopted to assist prosecutorial decisionmaking. Ibid. (citing State v. Lagares, 127 N.J. 20, 31-33, 601 A.2d 698 (1992)).
Guidelines were originally promulgated by the Attorney General in September 1992. See State v. Gerns, 145 N.J. 216, 229-30, 678 A.2d 634 (1996). In State v. Brimage, 153 N.J. 1, 17, 706 A.2d 1096 (1998), the Court held that these original guidelines failed to promote uniformity in plea agreement policies because they permitted each county to adopt its own standard plea offers. In reaching this conclusion, *148 the Brimage Court noted that the primary purpose of a section 12 waiver is to provide incentives for defendants to cooperate with law enforcement authorities. Id. at 9, 706 A.2d 1096. Another purpose is to encourage plea bargaining, which also accords with the stated goals of the Comprehensive Drug Reform Act (CDRA) of 1987 to minimize pretrial delay and to ensure the prompt disposition of drug-related criminal charges and the prompt imposition of punishment. Ibid. (citing N.J.S.A. 2C:35-1.1).
The Brimage Court held that judicial review of prosecutorial waiver decisions through uniform written guidelines not only met the requirements of the separation of powers doctrine, but also comported with the dominant, if not paramount, goal of the Criminal Code to increase uniformity in sentencing. Id. at 13, 21, 706 A.2d 1096. In finding that the originally promulgated guidelines were inadequate, the Court held that disparity from county to county failed to meet the goal of uniformity and also threatened the balance between prosecutorial and judicial discretion required by Vasquez. Id. at 22-23, 706 A.2d 1096. The Court thus decreed that new guidelines had to be promulgated  ones that specified permissible ranges of plea offers for particular crimes and explicitly defined permissible bases for upward and downward departures. Id. at 24-25, 706 A.2d 1096.
The Attorney General issued the new guidelines, effective May 20, 1998. Attorney General Directive 1998-1, incorporating by reference Attorney General Guidelines for Negotiating Cases Under N.J.S.A. 2C:35-12. These are referred to as the Brimage Guidelines (Guidelines) and are applicable to defendant's sentence.[3]

II
The State argues that the trial court mistakenly reduced defendant's sentence to conform to one he would have been offered, under the Guidelines, if he had pled guilty before invoking his right to a suppression hearing. The State contends that the escalating plea offer policy embodied in the Guidelines does not impermissibly burden a defendant's constitutional right to a suppression hearing, and that the court was obligated to impose the sentence negotiated between the State and defendant pursuant to section 12. We agree with the State's position on this point.
According to the State's worksheet, defendant was placed in the "serious" category based on his criminal history, and in Row C of Table 1 based on his offense description. There were no aggravating and mitigating factors, no special application and enhancement features, no downward adjustments for trial proof issues, and no downward departures for substantial cooperation. Hence, the presumptive (now commonly referred to as mid-range) plea offers were applicable. In defendant's case, these offers were: twenty-four months of parole ineligibility for a pre-indictment offer; thirty months for an initial post-indictment offer; and thirty-three months for a final post-indictment offer. Guidelines, supra, Table I, at p. 57.
The State accordingly calculated the following pleas for the three categories: four years of prison, with two years of parole ineligibility for the pre-indictment offer; five years of prison, with thirty months of parole ineligibility for the initial post-indictment offer; and five years of prison, *149 with thirty-three months of parole ineligibility for the final post-indictment offer.
Defendant moved to suppress and an evidentiary hearing was conducted. Accordingly, the plea offer that defendant accepted was the third and final offer of five years subject to thirty-three months parole ineligibility. In exchange for pleading guilty to count three of the indictment, the State agreed to dismiss the remaining counts against defendant and to waive moving for an extended term, for which defendant was eligible, and defendant was permitted to appeal the denial of his motion to suppress. The trial court accepted the plea.
At sentencing, defendant admitted that thirty-three months of parole ineligibility was the correct number under the sliding scale of the Guidelines, that he was aware of the deadlines for each plea offer, and that he knew that the amount of parole ineligibility would increase upon his filing a motion to suppress. He noted that the offer of thirty-three months parole ineligibility was almost the same as the prior offer of thirty months of parole ineligibility, and that he just wanted to do the time and get it over with. He also understood that if he went to trial, his sentence could be even longer.
The court found that the plea agreement was "fair and in the interests of justice." Nevertheless, the court imposed only thirty months parole ineligibility because that was the maximum offer the State could have made under the Guidelines if defendant had not moved to suppress. Holding that defendant was being penalized for exercising his right to challenge the State's evidence against him, the court stated that although the Guidelines "tell the Prosecutor's Office what to do in making offers[,] [t]hey don't tell the judges what to do in sentencing." In a supplemental decision filed pursuant to R. 2:5-1(b), the trial judge explained that he declined to penalize defendant for exercising his constitutional right to a suppression hearing. We disagree.
Section 12 expressly states that the sentencing court shall not impose a lesser term of imprisonment or parole ineligibility than that provided under the terms of the plea agreement. In State v. Bridges, 131 N.J. 402, 408-09, 621 A.2d 1 (1993), the Court held that a sentencing court has no discretion to lower the custodial part of a section 12 plea agreement. Ibid. The court may either reject the plea in its entirety or impose its own sentence if the plea agreement is silent as to the term of imprisonment. Id. at 409, 621 A.2d 1. "Once a court accepts a negotiated guilty plea, . . . it is `bound by the specific terms and conditions of that negotiated agreement' for the purpose of imposing sentence." Ibid. (quoting Official Commentary to CDRA, reprinted in 9 Crim. Just. Q. 149, 161 (1987)). Allowing a court to sentence below the term agreed upon undermines the clear legislative purpose of encouraging defendants to cooperate with law enforcement authorities by insuring that both the State and the defendant receive the full benefit of their negotiated agreement. Bridges, supra, 131 N.J. at 409-10, 621 A.2d 1.[4]
*150 We disagree with the trial court's holding that a different result should be reached here simply because a lower offer would have been available to defendant if he had not filed a motion to suppress. Moreover, we do not accept the court's reasoning that defendant has been "penalized" for exercising his constitutional right to file a motion to suppress. "Prosecutors may . . . reasonably consider [the] early disposition" of cases "as an important law-enforcement objective" when entering into plea agreements with defendants. State v. Shaw, 131 N.J. 1, 13, 618 A.2d 294 (1993). See also State v. Jimenez, 266 N.J.Super. 560, 570, 630 A.2d 348 (App.Div.), certif. denied, 134 N.J. 559, 636 A.2d 518 (1993).
In Shaw, the Court held that the inclusion of a failure-to-appear clause in the plea agreement did not constitute an arbitrary or abusive exercise of the prosecutor's discretionary powers under the "hybrid" sentencing scheme of section 12. 131 N.J. at 15-16, 618 A.2d 294. The Court reiterated its holding in Bridges that, if a court has any doubt about the fairness of the plea agreement, it is obligated to refuse to accept it. Id. at 17-18, 618 A.2d 294. "Once accepted by the court, the plea governs the sentencing." Id. at 18, 618 A.2d 294. The Court did caution, however, that any reliance upon a no-appearance factor should be incorporated into the Guidelines. Id. at 18-19, 618 A.2d 294.
Defendant was well aware of the Guidelines's reliance upon a three-tiered escalating plea offer policy. This policy is vital to the operation of the Guidelines and furthers the purposes of a section 12 waiver, which are to provide incentives for defendants to cooperate with law enforcement and to encourage plea bargaining. Brimage, supra, 153 N.J. at 9, 706 A.2d 1096. The policy also furthers the purposes of the CDRA to minimize pretrial delay and to ensure the prompt disposition of charges and the prompt imposition of punishment. Ibid. We note that prompt disposition also aids in the rehabilitation of offenders by enabling them to accept responsibility for their conduct.
Contrary to the trial court's holding, there is no rule against encouraging guilty pleas by offering substantial benefits to a defendant. Corbitt v. New Jersey, 439 U.S. 212, 218-19, 99 S.Ct. 492, 497, 58 L.Ed.2d 466, 474 (1978). A plea "is the defendant's consent that [a] judgment of conviction may be entered" against him without the benefits attendant to a trial. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756 (1970). As long as the waiver of such constitutional rights is done voluntarily and knowingly, with full awareness of the relevant circumstances and likely consequences, there is no due process violation. Ibid. "[I]n the `give-and-take' of plea bargaining, there is no . . . element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, 610-11 (1978).
Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned. The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial; he gains a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation. Judges and prosecutors conserve vital and scarce resources. The public is protected from the risks posed by those charged with criminal offenses who are *151 at large on bail while awaiting completion of criminal proceedings.
[Blackledge v. Allison, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627-28, 52 L.Ed.2d 136, 145 (1977).]
Although it is true that plea agreements are unacceptable if based on an illegal term or condition, Pressler, Current N.J. Court Rules, comment 4.3 on R. 3:9-3 at 822 (2007), we disagree with the proposition that an agreement to forego filing a motion to suppress constitutes such an illegal term or condition. The prosecutor's offer of a harsher sentence because defendant filed a motion cannot be deemed to have violated any of his rights. Under both the general rules applicable to plea agreements, R. 3:9-3(e), and the specific requirements for negotiated agreements in section 12, a court faced with a plea agreement that does not serve the interests of justice may vacate the plea or permit the defendant to withdraw from it. Under section 12, however, the court may not impose a lesser sentence than that negotiated between the parties. Here the court expressly found that the plea agreement served the interests of justice, and defendant himself never argued to the contrary.
Accordingly, we hold that the trial court erred in imposing a lesser sentence on defendant than the one negotiated between him and the prosecutor pursuant to N.J.S.A. 2C:35-12.

III
Defendant contends that, because the Guidelines provide for mandatory minimum sentencing based on factors not found by a jury beyond a reasonable doubt, they violate the Sixth Amendment principles established in Blakely, supra, 542 U.S. at 296, 124 S.Ct. at 2531, 159 L.Ed.2d at 403, Natale, supra, 184 N.J. at 458, 878 A.2d 724, and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). According to defendant, to conform to the Sixth Amendment, the Guidelines must be considered merely advisory rather than binding, thereby entitling him to a remand for resentencing.
The State responds that the principles established in Blakely and its progeny are not implicated here, because (1) the Guidelines do not establish plea offers that would ever exceed the "statutory maximum;" (2) there is no right to a jury determination of a plea offer and no role for a jury in the plea bargaining process; and (3) Blakely does not apply to mandatory minimum periods of parole ineligibility. We agree with the State's position on this point.
In Blakely, the United States Supreme Court reaffirmed its holding in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435, 455 (2000), that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely, supra, 542 U.S. at 301, 124 S.Ct. at 2536, 159 L.Ed.2d at 412 (quoting Apprendi, supra, 530 U.S. at 490, 120 S.Ct. at 2362-63, 147 L.Ed.2d at 455). The "`statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, supra, at 303, 124 S.Ct. at 2537, 159 L.Ed.2d at 413.
In Blakely, the defendant pled guilty, admitting the elements of the offense of second degree kidnapping, as well as "the domestic violence and firearm allegations [of that offense], but no other relevant facts." Id. at 299, 124 S.Ct. at 2534-35, 159 L.Ed.2d at 410-11. At sentencing, the court imposed a sentence greater than that *152 recommended by the State, based on a finding to which the defendant had never admitted  that he acted with deliberate cruelty. Id. at 300, 124 S.Ct. at 2535, 159 L.Ed.2d at 411. The Court found that the sentence violated defendant's Sixth Amendment rights and held that
nothing prevents a defendant from waiving his Apprendi rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.
[Id. at 310, 124 S.Ct. at 2541, 159 L.Ed.2d at 417-18 (citations omitted).]
In Booker, the Court held that Blakely applied to the Federal Sentencing Guidelines (FSG), and that application of the FSG requiring judges to impose sentences based on additional facts not found by a jury violated a defendant's Sixth Amendment rights. 543 U.S. at 233, 125 S.Ct. at 749-50, 160 L.Ed.2d at 643 (Stevens, J. opinion of the Court). The remedy was to make the FSG advisory, rather than mandatory, allowing sentencing judges to consider them along with other sentencing goals. Id. at 259, 125 S.Ct. at 764, 160 L.Ed.2d at 659-60 (Breyer, J. opinion of the Court).
In Natale, our Supreme Court invalidated the presumptive sentencing scheme under our Criminal Code because it found that, for Apprendi, Blakely and Booker purposes, the statutory maximum was the presumptive term. 184 N.J. at 484, 878 A.2d 724. Without presumptive terms, judges must still "balance the aggravating and mitigating factors, [but are] no longer . . . required to do so from the fixed point of a statutory presumptive." Id. at 488, 878 A.2d 724.
The Natale Court also reaffirmed the principle of Blakely that, with respect to defendants who plead guilty, the State may seek judicial enhancements as long as the defendant "`stipulates to the relevant facts or consents to judicial factfinding.'" Id. at 477, 878 A.2d 724 (quoting Blakely, supra, 542 U.S. at 310, 124 S.Ct. at 2541, 159 L.Ed.2d at 403).
[A] defendant's guilty plea, standing alone, does not constitute implicit consent to judicial factfinding of aggravating factors to support a sentence above the presumptive term. In a plea setting, the maximum sentence authorized for Sixth Amendment purposes depends on the defendant's admissions at his plea hearing and his prior criminal convictions, if any.
[Natale, supra, 184 N.J. at 495, 878 A.2d 724 (citations omitted).]
Hence, "neither a guilty plea nor a State's sentence recommendation opens the door to `judicial sentence enhancements.'" Ibid. (quoting Blakely, supra, 542 U.S. at 310, 124 S.Ct. at 2541, 159 L.Ed.2d at 403). "Only if the defendant `stipulates to the relevant facts or consents to judicial factfinding' is the sentencing court authorized to exceed the statutory maximum." Ibid.
Significantly, the Natale Court noted that our holding in State v. Anderson, 374 N.J.Super. 419, 864 A.2d 1174 (App.Div.), certif. denied, 185 N.J. 266, 883 A.2d 1062 (2005), was consistent with Blakely. 184 N.J. at 495 n. 12, 878 A.2d 724. In Anderson, we held that the United States Supreme Court did not intend Blakely to apply to a case where a defendant pleads guilty and, "although not acknowledging aggravating factors beyond the `elements' of the offense[]" or agreeing to judicial finding of those aggravating factors, nevertheless expressly acknowledges exposure *153 to a particular sentence imposed in exchange for the waiver of a trial by jury. 374 N.J.Super. at 424, 864 A.2d 1174.
A similar holding was reached in State v. Soto, 385 N.J.Super. 247, 896 A.2d 1148 (App.Div.), certif. denied, 188 N.J. 491, 909 A.2d 725 (2006). In that case, we held that, although the sentencing court had found an aggravating factor not admitted to by the defendant when he pled guilty, the defendant "impliedly authorized the judge to engage in such factfinding to impose the maximum sentence for the offense when defendant agreed to accept the terms of the plea agreement." Id. at 254-55, 896 A.2d 1148. By accepting a plea agreement that contained a sentence recommendation of a maximum term with an equivalent parole disqualifier, "rather than proceeding to trial, [the] defendant waived any objection that the . . . sentence was excessive." Id. at 255, 896 A.2d 1148. We further noted that, if the defendant had any objection to the sentence, "he should have raised it during [the] negotiations . . . or before sentence was pronounced." Ibid. In a plea agreement situation, a "defendant cannot legitimately complain that the sentence was unexpected or that he received a sentence other than that for which he explicitly negotiated. Under such circumstances, Blakely does not apply." Ibid.
The same principles are applicable here. Having negotiated a particular sentence with the prosecutor, defendant waived the right to have a jury find the facts necessary to support that sentence. We note further that defendant did not receive a sentence greater than the "presumptive" or mid-range term because of the prosecutor's reliance on any aggravating or enhancing factor. Rather, defendant received the maximum sentence solely because of the timing of the plea. The sentence, in turn, was determined solely by the record of his prior convictions (which is not implicated by Blakely), the amount of drugs involved (other than one ounce of marijuana), and the absence of weapons. Since defendant admitted that he possessed cocaine within a school zone, the sentence was based on the following: (1) the timing of his plea offer; (2) his record of prior convictions; and (3) admitted facts. Consequently, we see no Blakely violation.
We agree with the State's position that Blakely does not apply to the Brimage Guidelines because the Guidelines do not result in the imposition of a sentence above the "statutory maximum." That is, the Guidelines are intended to apply to reduce a defendant's exposure to otherwise mandatory minimum terms of imprisonment. Both the United States Supreme Court and our own Supreme Court have held that Apprendi and Blakely are not implicated when a statutory minimum, such as a mandatory period of parole ineligibility, is imposed. In Harris v. United States, 536 U.S. 545, 557, 122 S.Ct. 2406, 2414, 153 L.Ed.2d 524, 537-38 (2002), the Court held that "a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum)" did not have to be considered the domain of the jury. Ibid. The Sixth Amendment insures that a defendant "`will never get more punishment than he bargained for when he did the crime,' but [it does not] promise that he will receive `anything less' than that." Id. at 566, 122 S.Ct. at 2419, 153 L.Ed.2d at 543 (quoting Apprendi, supra, 530 U.S. at 498, 120 S.Ct. at 2367, 147 L.Ed.2d at 460 (Scalia, J., concurring)).
In State v. Abdullah, 184 N.J. 497, 510, 878 A.2d 746 (2005), our Supreme Court held that, for Sixth Amendment purposes, the "facts used to extend . . . sentenc[ing] beyond the statutory maximum *154 are . . . different from [those] used to set [a] minimum sentence." Hence, the aggravating and mitigating factors used to impose a parole disqualifier are not constitutional elements and the finding of such factors by a judge, rather than a jury, does not violate a defendant's right to due process or to a trial by jury. Id. at 511-12, 878 A.2d 746.
Accordingly, we hold that Blakely and Natale do not apply to sentences negotiated between a defendant and a prosecutor pursuant to section 12 and that they do not apply to the mandatory minimum periods of parole ineligibility that are set forth in the Guidelines. Defendant's Sixth Amendment rights were not violated by the court's imposition of the parole ineligibility period he negotiated with the prosecutor.

IV
With respect to the suppression motion, defendant contends that under State v. Carty, 170 N.J. 632, 790 A.2d 903 (2002), "a consent [to] search following a lawful stop of a motor vehicle cannot be deemed valid . . . unless there is a reasonable and articulable suspicion to believe that the motorist or a passenger has engaged in, or is about to engage in, criminal activity." Defendant further maintains that Fundora did not have "a reasonable and articulable suspicion that anything of an incriminating nature would be found inside this car."
In Carty, the Supreme Court held that "consent searches following a lawful stop of a motor vehicle should not be deemed valid . . . unless there is reasonable and articulable suspicion to believe that an errant motorist or passenger has engaged in, or is about to engage in, criminal activity." Id. at 647, 790 A.2d 903. The mere fact that the driver or occupants of a vehicle "appear[] to be nervous" is insufficient for a warrantless search of a vehicle, even with consent. Id. at 647-48, 790 A.2d 903. Here, the evidence demonstrated that Fundora had more than mere nervousness to support a reasonable and articulable suspicion that the occupants were already  or about to be  engaged in criminal activity.
The trial court found that
Det. Fundora had ample, reasonable and articulable suspicion for requesting a consent to search. . . . [a]nd I've indicated I found him to be credible. But in short, the failure of the individuals to produce identification, the story by Mr. Standard that he was not the original driver, two males walking to a car that was stopped in a fast lane, the production of two sets of summonses, that is for two different individuals from a glove box of a rented car, the fact that Mr. Vernon Valentine who appeared, who looked like a Mr. Whitley did not know who Mr. Whitley was, and did not know how those summonses had gotten into the car.
The fact that the automobile in question was a rented vehicle, the fact that the suspects were all nervous[,] [t]he fact that there appeared to be an argument in the car, the fact that one suspect was sweated and agitated[,] [and] [t]he fact that another suspect appeared to be on a cell phone making a call . . . provided the detective with a reasonable and articulable suspicion.
Additionally, I'd like to note that the defendant[,] Mr. Whitley a/k/a Mr. Valentine[,] was made aware of his right to refuse to grant the consent to search the vehicle. . . . Mr. Valentine/Mr. Whitley was present during the search and he agreed to open the trunk. Additionally, this was a noncustodial situation. The touchstone of the [Fourth] Amendment is reasonableness.
*155 We agree and affirm the trial court's denial of the suppression motion substantially for the reasons set forth in its decision rendered on the record on March 15, 2005.

V
To summarize our holding here: (1) the sentence imposed by the trial court violated the Brimage Guidelines and the matter is remanded for resentencing in accordance with the plea negotiated pursuant to the Brimage Guidelines; (2) the plea agreement entered in accordance with the Brimage Guidelines does not violate the principles articulated in Blakely, Booker or Natale; and (3) the trial court's denial of defendant's suppression motion is affirmed.
Affirmed in part; reversed and remanded in part.
NOTES
[1] Judge Wefing did not participate in oral argument. However, with the consent of counsel she has joined in this opinion. R. 2:13-2(b).
[2] State v. Brimage, 153 N.J. 1, 706 A.2d 1096 (1998).
[3] For offenses committed on or after September 15, 2004, the Attorney General promulgated revised guidelines, which are known as Brimage Guidelines 2.
[4] The section 12 restriction applies only when the prison sentence or period of parole ineligibility recommended by the prosecutor is less than a sentence mandated by statute. That is, when the recommendation is not for a lesser sentence than one statutorily mandated, the court is free to impose any lesser period authorized by the Code for that offense. State v. Thomas, 253 N.J.Super. 368, 372-75, 601 A.2d 1174 (App.Div.1992). Here, pursuant to N.J.S.A. 2C:35-7, the mandatory parole ineligibility term for defendant's offense was three years, a greater term than the State's offer.