**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3625-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHARLES W. RICHARDS,

    Defendant-Appellant.

_____

Submitted February 27, 2019 – Decided March 13, 2019

Before Judges Alvarez and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment Nos. 14-12-1237, 15-03-0708, and 15-06-0826.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Deputy Public Defender II, of counsel and on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Charles W. Richards appeals from a September 13, 2016 judgment of conviction following a guilty plea to one count of manufacturing, distributing or dispensing a controlled dangerous substance (CDS), N.J.S.A. 2C:35-5(a)(1), (b)(3); and one count of certain persons not to have weapons, N.J.S.A. 2C:39-7(b).  We affirm.

We take the following facts from the record.  Sergeant Albert Jacoby, a twenty-year veteran with the Florence Township Police Department, responded to a robbery at a liquor store on January 27, 2014.  The store's owner advised him the perpetrators had left in a silver vehicle.  Jacoby reviewed the store's surveillance video, which showed a male dressed in dark clothing, including a hooded sweatshirt, mask, and gloves entering the store with a firearm and committing the robbery.  The footage from the exterior of the store showed the suspect exiting a small, light-colored, compact vehicle parked on an adjacent street and re-entering the vehicle after the robbery.

As a result of a string of robberies in Camden and Burlington counties, the prosecutor's offices from each county established a joint task force including personnel and police.  During a February 7, 2014 briefing, the task force identified commonalities from each robbery, namely, 1) the perpetrators used a white or silver compact car which had front end damage; 2) there were two male

suspects, one white and one black, who wore masks, gloves, and dark clothing; and 3) the perpetrators used a black handgun. Jacoby attended the briefing and learned there had been twelve robberies where the description of the suspect matched the one in the Town Liquor robbery, and approximately five of the robberies involved a black handgun and a light or silver colored compact car.

Shortly after the briefing Jacoby responded to a 9-1-1 call from the Town Liquor Store reporting a silver Ford Focus parked adjacent to the store with a black male and a white male engaged in suspected CDS activity. Jacoby advised the officers who had responded ahead of him to use caution because the suspects might be the ones involved in the robberies. Once on the scene, Jacoby observed two males in the front seats of the vehicle. The officers also noted the smell of burnt marijuana emanating from the vehicle. Jacoby and the other officers removed defendant from the driver's seat and co-defendant Bryan Hawthorne from the passenger side. A search of defendant's person revealed a knife and a glassine baggie.

Defendant and Hawthorne gave conflicting explanations for being in the area. Defendant claimed he was driving Hawthorne to a hotel to pick up his belongings. He described the location of the hotel and claimed to be searching for a means of returning to it, but based on the vehicle's location and Jacoby's

3

knowledge of the hotel location, defendant's assertion was not credible. Defendant also claimed he was in the area to pick up his girlfriend in Voorhees, but the location of the vehicle did not support this explanation. Hawthorne claimed they had stopped so he could urinate, but police found no evidence of public urination in the area, which was snow-covered.

Defendant gave Sergeant Jacoby oral and written consent to search the vehicle. An initial search produced glassine baggies, and a double plastic bag containing a black airsoft gun, two masks, and gloves, which matched the description of those worn by the Town Liquor suspect. Following the initial search, police arrested defendant and impounded the vehicle. They obtained a search warrant for the entire vehicle and recovered, among other items, three cellular telephones, gloves, syringes, and dark colored clothing, including a hooded sweatshirt. The glassine envelopes recovered from the vehicle and defendant's person contained heroin.

A Burlington County and a Camden County grand jury returned three indictments against defendant for various offenses. Defendant filed motions to suppress the evidence seized from the search in each court. The Camden County court denied defendant's motion on February 25, 2016, following a four-day hearing.

4

On April 25, 2016, the Burlington County judge also denied defendant's motion to suppress, noting the arguments raised "the same exact factual scenario" as the Camden County case. The Burlington County judge concluded the factual findings had to "remain[] the same on the basis of collateral estoppel." Therefore, in order to address defendant's points of error on this appeal, we will rely upon the Camden County trial judge's decision.

Jacoby was the State's sole witness. The trial judge concluded "he was an excellent witness" because he remembered details, answered questions directly, and his answers were consistent. The judge found Jacoby's twenty years with the Florence Police Department also "add[ed] to his credibility."

The judge recounted Jacoby's testimony, namely, that there was a taskforce briefing earlier in the day, a 9-1-1 call reporting CDS activity, the vehicle's location near the scene of a former robbery, the similar description of the vehicle and its occupants to prior robberies, and Jacoby's review of the robbery video. He said "it was not unreasonable for the police officers to draw an inference that the vehicle described in the [9-1-1] call could possibly be connected to the robbery at Town Liquor, and possibly be connected to other robberies that had occurred in the area."

The trial judge also reviewed the video of the motor vehicle stop, concluded the search of the vehicle was lawful because the totality of the circumstances gave officers reasonable, articulable suspicion the vehicle's occupants had committed the robberies, and were armed. He added, "it was not unreasonable for the officers to conduct a motor vehicle . . . stop and secure the defendants in order to ensure the safety of the officers." Thus, it was reasonable for "the officers [to] order[] each of the occupants out of the vehicle, . . . to determine whether or not they were armed, and dangerous, and . . . to continue with their investigation by asking each defendant why they were in the area[.]" The judge also found when "each defendant gave differing answers as to what they were doing in the area, [it] increased the suspicion of the officers, and warranted the continued investigation."

The trial judge noted the video of the vehicle stop also demonstrated the legality of the search:

> I was struck by how calm the whole scene was, both by the officers['] . . . , as well as the defendants['] activities in this case.
>
> I thought . . . the officers were extremely professional. I thought the defendants were extremely cooperative in this case.
>
> . . . .

. . . [T]he consent to search was valid and was voluntary. Again, the court was struck by the calm nature of the entire scene. The police and the defendants were courteous with one another.

The police got [defendant] his coat, because it was cold. He wanted his cell phone, . . . they said . . . they would accommodate that.

Based on these findings, both judges denied defendant's motions to suppress. Defendant subsequently pled guilty to five counts of robbery under the Burlington County indictment and four counts in the Camden County indictment, and was sentenced to concurrent terms. This appeal followed.

Defendant argues the following points on appeal:

POINT I – ALL EVIDENCE OBTAINED AS A RESULT OF THE MOTOR VEHICLE STOP MUST BE SUPPRESSED BECAUSE THE STOP WAS CONDUCTED WITHOUT REASONABLE SUSPICION OF WRONGDOING. U.S. CONST., AMEND. IV; N.J. CONST., ART. I, ¶ 7.

POINT II – EVEN IF THE POLICE HAD REASONABLE SUSPICION TO STOP THE VEHICLE, THE "FELONY STOP" WAS A DE FACTO ARREST DEVOID OF PROBABLE CAUSE AND THEREFORE UNLAWFUL. U.S. CONST., AMEND. IV; N.J. CONST., ART. I, ¶ 7.

I.

A.

"An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to conclusions of law made by trial courts in suppression decisions, which we instead review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

[State v. Mandel, 455 N.J. Super. 109, 113-14 (App. Div. 2018).]

On appeal, defendant argues the stop lacked reasonable suspicion because the State produced no evidence to link the car he occupied with the one allegedly driven in the other robberies. He also asserts "[a]ccepting for the sake of argument that the police had reasonable suspicion to stop defendant's vehicle, the manner in which they stopped it was so frightening and aggressive that it was the functional equivalent of an arrest."

## B.

> Like its federal counterpart, Article I, Paragraph 7 of the New Jersey Constitution protects against "unreasonable searches and seizures" and generally requires a warrant issued on "probable cause." N.J. Const. art. I, ¶ 7; see U.S. Const. amend. IV. "[A] warrantless search is presumptively invalid" unless the State establishes the search falls into "one of the 'few specifically established and well-delineated exceptions to the warrant requirement.'" State v. Gonzales, 227 N.J. 77, 90 (2016) (citation omitted).
>
> [Mandel, 455 N.J. Super. at 114.]

One such exception is an investigatory stop. See Terry v. Ohio, 392 U.S. 1, 27 (1968); United States v. Hensley, 469 U.S. 221, 226 (1985) (finding police officers may stop a motor vehicle and detain its occupants temporarily while they investigate a criminal offense). To subject a person to an investigatory stop and detention, however, the police must have reasonable, articulable suspicion of conduct that violates the law. State v. Bernokeits, 423 N.J. Super. 365, 371-72 (App. Div. 2011).

A police officer may conduct an investigatory stop if, based on the totality of the circumstances, there is reasonable suspicion to believe an individual has just engaged in, or is about to engage in, criminal activity. State v. Maryland, 167 N.J. 471, 487 (2001) (citing Terry, 392 U.S. at 21). Our Supreme Court has defined "reasonable suspicion" as "a particularized and objective basis for

suspecting the person stopped of criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Under the totality of the circumstances analysis, weight is given to the officer's experience and knowledge, and the "rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise." State v. Todd, 355 N.J. Super. 132, 137-38 (App. Div. 2002) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

Furthermore,

> [o]ur courts have recognized that "the smell of marijuana itself constitutes probable cause 'that a criminal offense ha[s] been committed and that additional contraband might be present.'" State v. Walker, 213 N.J. 281, 290 (2013) (alteration in original) (quoting State v. Nishina, 175 N.J. 502, 516-17 (2003)). The "smell of marijuana emanating from [an] automobile" establishes "probable cause [for an officer] to believe that it contain[s] contraband." [State v. Myers, 442 N.J. Super. 287, 296 (App. Div. 2015)] (quoting State v. Pena-Flores, 198 N.J. 6, 30 (2009)); see also State v. Guerra, 93 N.J. 146, 150 (1983).
>
> [Mandel, 455 N.J. Super. at 114-15 (alteration in original).]

Here, the knowledge Jacoby obtained from the task force briefing describing the suspects and the vehicle, his review of video from other robberies, the 9-1-1 call reporting suspected CDS activity, and the smell of burnt marijuana

when officers approached provided ample reasonable suspicion to perform the vehicle stop. The trial judge's conclusion the totality of these circumstances supported the legality of the stop should not be disturbed.

C.

We are also unpersuaded by defendant's description of the stop and his claim it was tantamount to an unlawful arrest. Police can order a driver out of a vehicle incident to a lawful stop. State v. Smith, 134 N.J. 599, 618 (1994). Additionally,

> [t]o support an order to a passenger to alight from a vehicle stopped for a traffic violation, . . . the officer need not point to specific facts that the occupants are "armed and dangerous." Rather, the officer need point only to some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car.
>
> [Id. at 618.]

Consent is a well-recognized exception to the Fourth Amendment's search warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Furthermore, "consent searches are considered a 'legitimate aspect of effective police activity.'" State v. Domicz, 188 N.J. 285, 305 (2006) (quoting Schneckloth, 412 U.S. at 228).

11

To be valid, a consent to search must be voluntary and knowing in nature. Schneckloth, 412 U.S. at 222. The person giving consent must first be advised of his or her right to refuse. State v. Johnson, 68 N.J. 349, 353-54 (1975). Additionally, when police request consent to search during a motor vehicle stop, they must have a reasonable and articulable suspicion of criminal wrongdoing. State v. Carty, 170 N.J. 632, 635 (2002); State v. Thomas, 392 N.J. Super. 169, 188 (App. Div. 2007). That standard has been defined as "a particularized and objective basis for suspecting the person stopped of criminal activity[,]" and is a far lower standard than probable cause. Stovall, 170 N.J. at 356-57 (quoting Ornelas, 517 U.S. at 696). "[A] finding of reasonable and articulable suspicion of ongoing criminality" is determined by objective "cumulative factors in a totality of the circumstances analysis[.]" State v. Elders, 192 N.J. 224, 250 (2007).

Here, police had ample reasonable suspicion the occupants of the vehicle were engaged in CDS activity, were the perpetrators of the robberies, and thus were armed and dangerous. Therefore, it was reasonable for police to approach with caution, weapons drawn, order defendant and Hawthorne out of the vehicle, and then separate and handcuff them. Once officers assured their safety, the video evidence confirms the judge's findings the officers were "extremely

professional" and defendants were "extremely cooperative." Defendant then gave voluntary consent and police took the additional prophylactic step of securing a warrant to search the vehicle after it was impounded. For these reasons, we reject the argument the stop was tantamount to an unlawful arrest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3625-16T4