**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3811-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEVIN D. ROBERTS, a/k/a
TAMIR HAWKINS, KEVIN
DWAYNE ROBERTS, KEVIN
JOHNSON, KEVIN ROBERTS,
and CYPRESS MOUNDO,

     Defendant-Appellant.

_____

Submitted March 10, 2020 – Decided April 21, 2020

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-09-2285.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat,

Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kevin Roberts appeals from the judgment of conviction entered by the Law Division on January 19, 2018. On appeal, he challenges the denial of two suppression motions without oral argument and his sentence. We affirm.

In September 2014, an Essex County grand jury returned Indictment number 14-09-2285, charging Karif Ford, Basim Henry, Hanif Thompson, and defendant with second-degree conspiracy to commit carjacking, N.J.S.A. 2C:5-2, 2C:15-2(a) (count one); first-degree carjacking, N.J.S.A. 2C:15-2(a)(2) (count two); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count three); first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six). On the same day, an Essex County grand jury returned Indictment number 14-09-2288, charging defendant with second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b).

Prior to trial, all four defendants unsuccessfully moved to suppress evidence. Pursuant to N.J.R.E. 404(b), the State moved to admit evidence of defendants'

conduct three days before the day of the crimes charged. Judge Michael L. Ravin granted the State's Rule 404(b) motion.

After a jury convicted Henry on all counts, and the court sentenced him to life imprisonment plus ten years, defendant pleaded guilty to first-degree carjacking (count two), pursuant to a plea agreement with the State. In exchange for his guilty plea and his agreement to give complete and truthful testimony against the remaining co-defendants, the State agreed to recommend a twenty-year sentence, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2., and the dismissal of all remaining counts on both indictments.

On January 18, 2018, defendant appeared for sentencing. Judge Ravin found aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (the risk that defendant will commit another offense), aggravating factor six, N.J.S.A. 2C:44-1(a)(6) (the extent of defendant's prior criminal record and the seriousness of the offense he has been charged with), and aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (the need for deterring defendant and others from violating the law); in addition, he found mitigating factor twelve, N.J.S.A. 2C:44-1(b)(12) (the willingness of defendant to cooperate with law enforcement authorities). The judge sentenced defendant to a

3

term of twenty years of imprisonment with eighty-five percent parole ineligibility, subject to NERA. The judge dismissed the remaining charges against defendant.

On appeal, defendant raises the following arguments:

POINT I

THE TRIAL COURT ERRED BY FAILING TO HOLD ORAL ARGUMENT ON THE MOTIONS TO SUPPRESS EVIDENCE OBTAINED WITH WARRANTS DESPITE ITS BEING REQUESTED BY THE DEFENDANT, INFRINGING HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

POINT II

THE SENTENCING COURT INTERPRETED MITIGATING FACTOR [TWELVE] IN AN INAPPROPRIATE MANNER AND CONSEQUENTLY FAILED TO GIVE IT THE NECESSARY WEIGHT.

I

We discern the following facts from the record. In the late afternoon of December 15, 2013, Jaime and Dustin Friedland[1] drove their 2012 silver Range Rover to the The Mall at Short Hills (the mall) in Millburn and parked on the third-floor parking deck. Several hours later, Henry drove Thompson, Ford, and

---

[1] For clarity, and intending no disrespect, we refer to Jaime and Dustin Friedland by their first names.

defendant in a 1996 green and beige two-tone GMC Suburban to the same parking deck.

Shortly after 9:00 p.m., surveillance footage from the mall captured the couple returning to their Range Rover. Dustin opened the car door for Jamie and then walked around to the back of the car. At this point, Thompson and defendant approached Dustin; following a struggle, Thompson shot Dustin in the head, inflicting a fatal wound. After pointing a gun at Jaime's head and ordering her to get out of the car, Thompson and defendant fled in the Range Rover, following Henry and Ford in the Suburban. Henry, Thompson, Ford, and defendant then returned to Newark.

Within an hour of the shooting, Lieutenant Luigi Corino of the Essex County Prosecutor's Office (ECPO) began reviewing mall surveillance footage, resulting in the issuance of a "be on the lookout" alert for both the Range Rover and the Suburban. Police recovered the Range Rover the following morning in Newark.

Investigators later learned that on December 12, 2013, Sergeant Jamal Poyner of the Millburn Police Department ran the license plate number of a GMC Suburban driving suspiciously up and down the aisles of the mall parking lot. Lieutenant Corino requested surveillance from that date, which revealed the Suburban following a 2013 white Range Rover out of the parking lot.

5

The police identified G.S.[2] as the owner of the white Range Rover. According to E-Zpass records from December 12, 2013, the Suburban passed through a New Jersey Turnpike toll booth immediately behind the Range Rover. Lieutenant Corino interviewed G.S.'s daughter, who confirmed she drove the Range Rover to the mall on December 12, 2013.

On December 17, 2013, the court granted the State's application to install and monitor a mobile tracking device on the 1996 GMC Suburban registered to a person believed to be Henry's mother.[3] In support of the application, the State provided an affidavit from Detective Miranda Mathis that stated, "During the course of the investigation, a review of the surveillance footage from the [mall] captured a 1996 GMC Suburban, New Jersey license plate . . . leaving the mall parking deck at a high rate of speed followed by the carjacked Range Rover Wagon." She identified Henry's mother as the registered owner of the Suburban and stated the current location of the vehicle was at her address in South Orange.

---

[2] To protect their privacy, we use initials to refer to G.S. and her daughter.

[3] The record indicates it was later determined the actual owner of the vehicle was the "significant other" of Henry's mother, who resided at the same address as Henry and his mother.

A-3811-17T3

On December 19, 2013, Ford met with ECPO detectives; after waiving his <u>Miranda</u>[4] rights, he agreed to submit to an interview, which the detectives recorded. Ford provided a detailed account of the carjacking and admitted his involvement. He informed the detectives he was staying at his mother's house, and that the clothes he wore during the carjacking, including a burgundy vest, remained at that location.

In addition, Ford voluntarily turned over his cell phone to the detectives; a search of the phone revealed text messages from Thompson's phone, telling Ford that he should not give anyone the phone number, and that he should "stop running" his "mouth." On December 20, 2013, police obtained arrest warrants for Henry, Ford, Thompson, and defendant.

On December 21, 2013, police executed a search warrant of the home of Henry's mother in South Orange. Later that day, police arrested Henry at a motel in Easton Pennsylvania. After waiving his <u>Miranda</u> rights, Henry provided a statement, recounting the events leading up to the murder, the murder itself, and his efforts to evade detection.

During the statement, Henry confirmed that, several days prior to the murder, he and Thompson drove to the mall in the GMC Suburban, looking for a Jeep Cherokee

---

[4] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-3811-17T3

to steal. He confirmed that he picked up Thompson, Ford, and defendant in the Suburban on the night of the murder and went to the mall to steal a Range Rover. Henry admitted he saw a gun in Thompson's coat before the four men went to the mall.

In September 2015, defendants all filed or joined in motions to suppress evidence, including the cell phone records of all four defendants obtained with communication data warrants (CDWs). The cell phone records showed that all four defendants were together before the murder, that several of their phones pinged off of towers servicing the mall just before the murder, that their phones were not in use at the time of the murder, that the four men were in contact with one another shortly after the murder, and that all four defendants returned to the Newark area after the murder.

In an affidavit submitted by the State in opposition to the motion, Detective Mathis explained:

> I believed then, as I do now, that every factual assertion in that paragraph was and is accurate. . . . With regard to the language in question . . . "[t]he vehicle is currently located at [a specific address in] South Orange, New Jersey." While the language could lead [one] to conclude that the license plate was observed on the video, and it was not, the fact is our investigation led us to believe the car in the video had that plate number, that the plate number matched the car, that the last address for the car was [the

South Orange address], and most importantly that the car was currently at that address.

Without hearing oral argument on the motions, Judge Ravin issued a written opinion denying defendants' motions to suppress evidence, rejecting their arguments as lacking in merit. The judge also concluded that defendants were not entitled to a Franks[5] hearing "because they failed to provide an offer of proof, such as witness affidavits, to support" their claims that "the affidavits were deliberately false or contained falsities made with reckless disregard for the truth."

Judge Ravin further explained:

> A literal reading of the statement . . . in support of the CDWs, that the Suburban captured on the surveillance had a license plate number . . . does not imply that the license plate number was visible in the surveillance video; rather, it is consistent with the implication that the license plate number could have been discovered from other sources, which is the State's claim, and that the license plate number was included in the affidavits for descriptive purposes.

Judge Ravin reasoned probable cause existed for the CDWs "because the totality of the circumstances described in the affidavit . . . supported the belief that tracking the [1996 two toned-green and beige GMC Suburban] would provide evidence" of the murder. The judge concluded the mistaken identification of Henry's mother as

---

[5]  Franks v. Delaware, 438 U.S. 154 (1978).

A-3811-17T3

the owner of the vehicle, rather than defendant's mother's partner, "does not change the analysis."

Additionally, Judge Ravin explained he denied oral argument on defendants' suppression motions because the issues were not complex, and he found the briefs submitted were succinct and precise. Thus, the judge reasoned that "judicial economy militate[d]" deciding the motions on the parties' briefs.

II

"An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)).

Defendant argues Judge Ravin erred by failing to grant his request for oral argument on his suppression motions. Defendant relies on State v. Parker, 459 N.J. Super. 26, 30-31 (App. Div. 2019).

We acknowledge "[o]ral advocacy is a fundamental aspect of our criminal justice system and should be encouraged, preserved and protected." Id. at 31. However, only in civil and family part motions is oral argument granted on motions as of right. R. 1:6-2(d). Oral argument on a criminal motion is not mandated by the United States or New Jersey Constitution or any applicable New Jersey Court Rule. We

10

find the judge did not abuse his discretion because he provided a reasonable explanation in denying oral argument, finding the issues were not complex and the briefs submitted were succinct and precise.

## III

We next turn to defendant's claim of sentencing error. Defendant argues Judge Ravin interpreted mitigating factor twelve in a manner unsupported by the record because the judge "downplayed" defendant's cooperation.

"Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). The sentence must be affirmed unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Here, defendant received the sentence negotiated in his plea agreement. "While the sentence imposed must be a lawful one, the court's decision to impose a sentence in accordance with the plea agreement should be given great respect, since a 'presumption of reasonableness . . . attaches to criminal sentences

imposed on plea bargain defendants.'" State v. S.C., 289 N.J. Super. 61, 71 (App. Div. 1996) (alteration in original) (quoting State v. Sainz, 107 N.J. 283, 294 (1987)). If defendant had any objection to the recommended sentence, he should have raised it during the plea negotiations or before he was sentenced. State v. Thomas, 392 N.J. Super. 169, 186 (App. Div. 2007). Defendant received the recommended sentence. As such, he "cannot legitimately complain that the sentence was unexpected or that he received a sentence other than that for which he explicitly negotiated." Ibid. (quoting State v. Soto, 385 N.J. Super. 247, 255 (App. Div. 2006)).

Judge Ravin found mitigating factor twelve because defendant agreed to testify against his co-defendants. He also found aggravating factors three, six and nine. Defendant does not contest the judge's reasoning regarding any aggravating factor. Instead, defendant challenges the judge's application of mitigating factor twelve, arguing that he failed to afford mitigating factor twelve appropriate weight. This argument lacks merit.

Judge Ravin found that defendant's cooperation was already factored into his plea agreement and resulted in defendant receiving a favorable plea offer. Moreover, the judge weighed this one mitigating factor against the three aggravating ones. Judge Ravin gave great weight to the three aggravating

factors – noting that each was well-supported by defendant's "extensive criminal history" – and weighed them against mitigating factor twelve, finding the aggravating factors "substantially outweighed" the one mitigating factor. Those findings were amply supported by the record. Thus, defendant received an appropriate sentence pursuant to his plea agreement. Soto, 385 N.J. Super. at 255.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION