NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0033-14T1

EDWARD J. SCANNAVINO,

     Plaintiff-Appellant,

v.

MARIE WALSH and EVERETT WALSH,

     Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

April 14, 2016

APPELLATE DIVISION

Argued February 2, 2016 — Decided April 14, 2016

Before Judges Reisner, Hoffman and Leone.[1]

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. DC-16378-13.

Robert M. Mayerovic argued the cause for appellant.

James H. Foxen argued the cause for respondent (Methfessel & Werbel, attorneys; Mr. Foxen, on the brief).

    The opinion of the court was delivered by

LEONE, J.A.D.

    Plaintiff Edward J. Scannavino appeals the Special Civil Part's dismissal of his complaint against defendants Marie and

_____

[1] Judge Hoffman did not participate in oral argument.  He joins the opinion with the consent of counsel.  R. 2:13-2(b).

Everett Walsh.[2]  Plaintiff alleges defendants improperly allowed the roots of trees on their property to cause damage to a retaining wall between the parties' properties.  Because defendants did not plant or preserve the trees, they were a natural condition for which defendants were not liable. Accordingly, we affirm.

## I.

The following facts are drawn from the testimony in the three-day bench trial, and from Judge Susan J. Steele's written opinion.  Plaintiff and defendants own adjoining properties in Carlstadt.  Plaintiff does not live at his property, which is occupied by a tenant.  Defendants bought their property in February 2004 and have resided there since.

Plaintiff's property and defendants' property are separated by a retaining wall made out of cinder blocks.  The retaining wall is approximately four feet high and one hundred feet long. After 2004, a mulberry tree and some shrubs began growing on defendants' property near the retaining wall.[3]  The trees did not exist in 2004 when defendants bought their property, and Marie

---

[2] Because defendants share a last name, when referring to Marie we use her first name.

[3] Like the parties and the trial court, for ease of reference we will refer to the mulberry tree and shrubs collectively as "trees."

did not plant the trees. The trial court found the presence of the trees was a natural occurrence.

Once the trees began growing, Marie or her son trimmed the trees every year. However, they never trimmed any of the roots below the surface of the ground. No evidence was presented that trimming the trees above the ground had any effect on the growth of the roots.

Plaintiff testified that he first noticed damage to the retaining wall in January 2012. Plaintiff asserted that the underground roots from the trees caused the retaining wall to tilt. Shortly thereafter, he sent a letter to Marie expressing concern about the damage. Marie then hired workers to trim some of the trees near the retaining wall. In October 2012, plaintiff sent Marie a second letter, via certified mail, reiterating that "the trees on your property have caused excessive damage to my retaining wall," but warning Marie not to have her employees enter his property to remove the trees without first supplying plaintiff with proof of insurance and permits. Marie did not respond.

On July 22, 2013, plaintiff filed a complaint against defendants. He alleged that their careless, negligent, and grossly negligent maintenance of their property caused the damage to the retaining wall. He sought $12,750 in damages.

At trial, plaintiff, his tenant, and Marie testified. Both parties also called witnesses to testify to the amount and nature of the damage to the retaining wall. Defendants' expert opined that improper installation, or "simple wear, tear, and deterioration," could have caused the damage to the retaining wall. Moreover, Marie asserted that when she and her husband moved onto the property, the retaining wall was already tilting and had some cinder blocks missing.

The trial court issued its verdict in a July 15, 2014 written opinion. The court found that the trees near the wall were a "naturally occurring condition and therefore defendants cannot be held liable for the condition of the wall." Plaintiff appeals.

## II.

We must hew to our standard of review. "'Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review.'" D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (citation omitted). "'[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (citations omitted).

"To the extent that the trial court's decision constitutes a legal determination, we review it de novo."  Ibid.

### III.

"A cause of action for private nuisance derives from the defendant's 'unreasonable interference with the use and enjoyment' of the plaintiff's property.  When analyzing nuisance claims, 'our courts are guided by the principles set forth in the Restatement (Second) of Torts.'"  Ross v. Lowitz, 222 N.J. 494, 505 (2015) (citations omitted).

Under the Restatement (Second) of Torts, "neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land."  Restatement (Second) of Torts § 363 (1965).  A "'[n]atural condition of the land' is used to indicate that the condition of land has not been changed by any act of a human being . . . .  [I]t is also used to include the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them."  Id. at § 363 comment b.

Similarly, "a possessor of land is not liable to persons outside the land for a nuisance resulting solely from a natural condition of the land," including "trees, weeds, and other vegetation on land that has not been made artificially receptive

to it by act of man."  Restatement (Second) of Torts § 840(1) &
comment a (1979).

However, "trees or plants planted or preserved" are "a non-
natural or artificial condition."  Restatement (Second) of Torts
§ 363 comment b (1965).  For example, where a possessor of land
or his predecessor has "planted a number of eucalyptus trees
near the boundary line of B's land," and "[t]he roots of the
eucalyptus trees grow into B's land" causing damage, the
landowner "is subject to the rule" of liability for artificial
conditions, "since the eucalyptus trees are not a natural
condition."  Restatement (Second) of Torts § 840 comment a,
illustration 4 (1979); see id. at § 839 ("A possessor of land is
subject to liability for a nuisance caused . . . by an abatable
artificial condition on the land" under certain conditions).

We have recognized that the Restatement (Second) of Torts
"draws a distinction between nuisances resulting from artificial
and natural conditions of land.  The former are actionable; the
latter are not."  D'Andrea v. Guglietta, 208 N.J. Super. 31, 36
(App. Div.) (citing Restatement (Second) of Torts §§ 839-40
(1979)), certif. denied, 105 N.J. 555 (1986).  Thus, we have
"held that injury to an adjoining property caused by the roots
of a planted tree was actionable as a nuisance."  Id. at 37;
accord Deberjeois v. Schneider, 254 N.J. Super. 694, 700 (Law

Div. 1991) (citing <u>Restatement (Second) of Torts</u> § 363 (1965)), <u>aff'd o.b.</u>, 260 <u>N.J. Super.</u> 518 (App. Div. 1992); <u>see also</u> <u>Black v. Borough of Atlantic Highlands</u>, 263 <u>N.J. Super.</u> 445, 453 (App. Div. 1993) ("liability in tort to adjoining property owners may be established for damages proximately flowing from dangerous conditions caused by overhanging branches or matter dropping from trees which are not deemed 'natural' when specifically planted for the purposes of the defendant landowner").

> The rationale for the property owner's liability in this case is not because of the natural process of the growth of the tree roots. Instead <u>it is the positive act — the affirmative act — of the property owner in the actual planting of the tree</u> which instigated the process. The fact that the affirmative act is helped along by a natural process does not thereby make the condition a natural one within the meaning of the traditional rule.
>
> [<u>Deberjeois</u>, <u>supra</u>, 254 <u>N.J. Super.</u> at 703-04 (emphasis added).][4]

---

[4] Our affirmance in <u>Deberjeois</u> reaffirmed the principles distinguishing natural and artificial conditions, despite our earlier statement that it "appears that even the distinction between natural and artificial conditions might now be considered anachronistic." <u>Burke v. Briggs</u>, 239 <u>N.J. Super.</u> 269, 275 (App. Div. 1990) (finding no strict liability in nuisance where a branch of the defendant's tree fell on the plaintiff's garage). In any event, <u>Burke</u> distinguished <u>D'Andrea</u> "because of the unusual nature of the intrusion in that case," namely root growth. <u>Id.</u> at 274-75. As root growth is the issue here, the principles of <u>Deberjeois</u> and <u>D'Andrea</u> are controlling.

Here, the trial court found the tree roots that grew and allegedly damaged the retaining wall were a natural condition. Marie testified that the trees naturally grew on the land and that she had not planted the trees. The trial court credited this testimony and we find no reason to "'disturb the factual findings and legal conclusions of the trial judge'" as they were supported by "'competent, relevant and reasonably credible evidence.'" D'Agostino, supra, 216 N.J. at 182 (citation omitted).

Plaintiff argues that defendants' "intervening" acts of "maintenance and nurturing" changed the "natural" characteristic of the trees and made defendants liable for the damage to the retaining wall. However, plaintiff failed to present this argument to the trial court. Generally, New Jersey "'appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 60 N.J. 229, 234 (1973)). However, as the trial court anticipated and addressed this issue, we will consider it.

The Restatement (Second) of Torts, supra, may permit liability for damage caused by a tree not planted by the possessor of land where the possessor has "preserved" the tree. Id. at § 363 comment b. However, "[t]he 'preservation' envisioned by the comment means some sort of affirmative action on the part of the defendant and not its failure to act." Beals v. State, 721 P.2d 1154, 1158 (Ariz. Ct. App. 1986) (rejecting the argument that "refusing to allow others to clear a channel through the vegetation amounted to a 'preservation' of the vegetation"). There was no evidence defendants took affirmative action to preserve the trees. Nor is there evidence that they engaged in any "nurturing" like fertilizing, or in any "maintenance" designed to keep the trees alive or growing. Rather, they simply cut back the trees above the ground.

For several reasons, we need not explore whether evidence of trimming or pruning that improves the health or growth of a tree would be sufficient to convert a "natural" tree into an "artificial condition."[5] First, there was no evidence that

---

[5] Some courts have criticized the rule of the Restatement (Second) of Torts because "it would often be difficult to ascertain whether a tree of natural growth might not be in part the result of human activity, such as cultivating, fertilizing, trimming, etc." Lane v. W.J. Curry & Sons, 92 S.W.3d 355, 362 (Tenn. 2002) (quoting Sterling v. Weinstein, 75 A.2d 144, 147 (Mun. Ct. App. D.C. 1950)); Iny v. Collom, 827 N.Y.S.2d 416, 420 (N.Y. App. Term 2006).

defendants' trimming had improved the trees' health or accelerated the growth of their roots. Second, the trial court considered "whether [Marie's] intervention with the tree by periodically trimming it has any effect on her liability" and found that "[a] thorough review of the testimony and evidence fails to demonstrate that any actions undertaken by [Marie] or her agent caused the damage to the wall." Third, at appellate oral argument, plaintiff stated he was not asking us to infer that cutting back the trees had increased root growth.

Rather, plaintiff takes the position that by cutting back the trees, even if it did not increase the roots' growth, defendants became liable for the damage caused by the roots. This argument is contrary to the rationale of the Restatement (Second) of Torts. "The rule of non-liability for natural conditions of land is premised on the fact that it is unfair to impose liability upon a property owner for hazardous conditions of his land which he did nothing to bring about just because he happens to live there." Deberjeois, supra, 254 N.J. Super. at 702-03. Because defendants' cutting back the trees did nothing to "bring about" the root growth, neither the trees nor the damage was "brought about" or "precipitated by the property owner's affirmative act." Id. at 703-04. The trees and the damage were not "'conditions which have arisen as the result of

some human activity,'" and the growth of the roots was not "'changed by any act of a human being.'" Id. at 704 (emphasis altered) (citation omitted); see Restatement (Second) of Torts § 840 comment a (a natural condition "does not comprehend conditions that would not have arisen but for the effect of human activity").

Moreover, plaintiff's argument "leads to the anomaly of imposing liability upon one who" cuts back wild growth "'while precluding liability of an adjacent landowner who allows the natural condition of his property to "run wild."'" See Lane, supra, 92 S.W.3d at 362 (citation omitted); Hale v. Ostrow, 166 S.W.3d 713, 718 (Tenn. 2005). The Restatement (Second) of Torts should not be read to create such an unnecessary anomaly. Further, defendants did at least some of their cutting back in response to plaintiff's complaints.

Plaintiff argues that liability is necessary to avoid self-help that might involve his entry onto defendants' property. There was no showing that such entry was necessary here. In fact, plaintiff's letter suggested abatement might be accomplished, at least in part, on his own property. "Under common law principles, defendants were entitled to cut off invading tree roots by exercising self-help," and "there is general agreement . . . that a neighbor may resort to self-help

to sever and remove invading tree roots." D'Andrea, supra, 208 N.J. Super. at 34-35. Those principles are reflected in the Restatement (Second) of Torts § 210 comment e (1965) ("where one person plants on his own land a tree, the roots . . . of which in course of time extend into neighboring land in the possession of the actor, [it is] the privilege of the actor to cut off the encroaching . . . roots"). In any event, entry onto a neighboring property to abate a private nuisance is permissible under certain circumstances. Id. at § 210(1).

Plaintiff argues that if we were to adopt the Restatement (Third) of Torts § 54 (2012), then defendants would be liable for the damage to the retaining wall because they failed to exercise reasonable care in allowing the tree's roots to damage the retaining wall. That section provides in pertinent part:

> (a) The possessor of land has a duty of reasonable care for artificial conditions or conduct on the land that poses a risk of physical harm to persons or property not on the land. (b) For natural conditions on land that pose a risk of physical harm to persons or property not on the land, the possessor of the land (1) has a duty of reasonable care if the land is commercial; otherwise (2) has a duty of reasonable care only if the possessor knows of the risk or if the risk is obvious.
>
> [Ibid.][6]

---

[6] We express no opinion on whether defendants would be liable if the Restatement (Third) of Torts applied. We note that a
(continued)

However, as noted above, our Supreme Court recently reiterated that "[w]hen analyzing nuisance claims, 'our courts are guided by the principles set forth in the Restatement (Second) of Torts.'" Ross, supra, 222 N.J. at 505. The Court in Ross continued to rely upon the Restatement (Second) of Torts even though it was aware of the Restatement (Third) of Torts. Id. at 505 n.7, 510 n.9. "Because we are an intermediate appellate court, we are bound to follow the law as it has been expressed by . . . our Supreme Court." Lake Valley Assocs., LLC v. Twp. of Pemberton, 411 N.J. Super. 501, 507 (App. Div.), certif. denied, 202 N.J. 43 (2010); see, e.g., Lodato v. Evesham Twp., 388 N.J. Super. 501, 507 (App. Div. 2006) (declining to deviate from the Supreme Court's view "immunizing abutting residential landowners from liability"). Therefore, we decline plaintiff's invitation to adopt and apply the Restatement (Third) of Torts to replace the Restatement (Second) of Torts' provisions governing such private nuisance claims.

---

(continued)
comment to Section 54 states that it imposes no duty "to inspect for latent danger." Id. at § 54 comment c. Thus, where, unknown to a homeowner, "a native tree on his property has developed an internal disease, weakening it," the homeowner "had no duty to inspect trees naturally on his property and thus is not liable to" a person whose parked car is damaged when a piece of the tree breaks off during a storm. Id. at § 54 comment c, illustration 1.

A-0033-14T1

Because the trial court found the trees were a natural condition, the court properly dismissed plaintiff's complaint. Thus, we need not reach his argument regarding the level of damages he should receive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0033-14T1