NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1417-16T4

STACI PIECH,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

GLENN LAYENDECKER,

      Defendant-Respondent,

and

JOHN LAYENDECKER,

      Defendant-Respondent/
      Cross-Appellant,

and

ANN LAYENDECKER,

      Defendant.

_____

APPROVED FOR PUBLICATION

October 19, 2018

APPELLATE DIVISION

Argued October 1, 2018 – Decided October 19, 2018

Before Judges Fasciale, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3473-14.

John R. Gorman argued the cause for appellant/cross-respondent Staci Piech (Lutz, Shafranski, Gorman and

Mahoney PA, attorneys; John R. Gorman, of counsel and on the brief).

David P. Skand argued the cause for respondent Glenn Layendecker (Eckert Seamans Cherin & Mellott, LLC, attorneys; Robert P. Zoller, of counsel and on the brief; David P. Skand, on the brief).

John A. Camassa argued the cause for respondent/cross-appellant John Layendecker (Camassa Law Firm, PC, attorneys; John A. Camassa, of counsel; Christopher M. Brady, on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

This personal injury social-guest liability case deals with flawed jury charges, the erroneous admission of subjective lay opinion testimony into evidence, the proper denial of summary judgment, and the inapplicability of the law of the case doctrine.

Plaintiff Staci Piech was attending a fortieth birthday party hosted by John Layendecker (John) for his son Glenn Layendecker (Glenn) (collectively defendants). Plaintiff – an innocent bystander – sustained permanent nerve damage and scarring when an eighteen-to-twenty inch thin hollow metal pole – that Glenn used to strike a piñata – broke off and struck her arm (the incident). The injury was completely unrelated to any dangerous condition or defect on the property itself.

Plaintiff appeals from a judgment of no cause of action, and from an order denying her motion for a new trial. John cross-appeals from an interlocutory order denying his motion for summary judgment, and from the trial judge's oral refusal to apply the law of the case doctrine. We agree with plaintiff's primary contentions that the judge provided flawed jury instructions on the issue of John's standard of care, and that the judge erred by allowing Glenn, and other eyewitnesses, to opine that they subjectively believed the incident was essentially unforeseeable.

Here, as to the host's standard of care owed to plaintiff, the judge charged both Model Jury Charges (Civil), 5.20F(4), "Social Guest – Defined and General Duty Owed" (rev. Dec. 2014) (the Model Charge), and Exception (2) to the Model Charge. That exception states that "[i]n cases where the host is conducting some 'activity' on the premises at the time of [the] guest's presence, [the host] is under an obligation to exercise reasonable care for the protection of [the] guest."

We hold that when a plaintiff sustains an injury resulting solely from an "activity" on the host's property – as opposed to an injury caused by a combination of that activity and a physical dangerous condition on the property – then the judge should only charge Exception (2). Here, as to the host's standard of care owed to plaintiff, it was improper for the judge to

instruct the jury in accordance with the Model Charge that John had a general duty to warn against dangerous conditions to the property itself, and also charge Exception (2).

Thus, on plaintiff's appeal, we reverse the judgment and remand for a new trial on all issues. We otherwise affirm on John's cross-appeal.

I.

Plaintiff maintains that this case does not involve injuries caused by the existence of a dangerous physical condition on John's property. If that were the case, then the judge would have been obligated to give the standard social guest premises liability jury charge – the Model Charge. But plaintiff contends – as she maintained at trial – that her injuries did not stem from a dangerous physical condition on the property, but solely from the piñata activities that John hosted in his backyard. Plaintiff argues that this difference required the judge to charge the jury with only Exception (2) – that John failed to use reasonable care for her protection.

In a typical case involving allegations that a social guest sustained injuries due to a dangerous condition on a landowner's property, a judge, as here, would give this charge:

> A social guest is someone invited to . . . her host's premises. The social guest must accept the premises of . . . her host as . . . she finds them. In other words, the host has no obligation to make his . . .

home safer for his . . . guest than for himself . . . . The host also is not required to inspect his . . . premises to discover defects that might cause injury to his . . . guest.

If, however, the host knows or has reason to know of some artificial or natural condition on the premises which could pose an unreasonable risk of harm to his . . . guest and that his . . . guest could not be reasonably expected to discover it, the owner . . . owes the social guest a duty to exercise reasonable care to make the condition safe or to give warning to his . . . guest of its presence and of the risk involved. In other words, although a social guest is required to accept the premises as the host maintains them, . . . she is entitled to the host's knowledge of dangerous conditions on the premises. On the other hand, where the guest knows or has reason to know of the condition and the risk involved and nevertheless enters or remains on the premises, the host cannot be held liable for the accident.

[Model Jury Charges (Civil), 5.20F(4), "Social Guest."]

In appropriate cases, the judge would add the following language:

If you find that the property owner . . . (1) knew or had reason to know of the dangerous or defective condition, (2) realized or in the exercise of reasonable foresight should have realized it involved an unreasonable risk of harm to the guest, (3) had reason to believe the guest would not discover the condition and realize the risk, and (4) failed to take reasonable steps to protect the guest from the danger by either making the condition safe or warning the guest of the condition and the risk involved, you may find the host negligent under the circumstances. If, however, you find that the defect was obvious and the owner . . . had reason to believe the social guest would be aware of

the defect and the risk involved, you must find the host was not negligent even though an injury occurred.

[Ibid.]

But there are exceptions to this general duty of care. One such exception is when – like here – a plaintiff suffered injuries from an activity on the property, rather than from a dangerous condition on the property itself.

Plaintiff argues that John's duty arose from the activity that he sponsored and conducted in his backyard, not from a static dangerous condition on the property. Relying on Hanna v. Stone, 329 N.J. Super. 385 (App. Div. 2000), plaintiff repeats her argument that the only applicable charge as to John's standard of care is contained in Exception (2). Hanna instructs that where the focus is not on a physical condition of the property, but instead, on activities conducted thereupon, "the person conducting the activity" has the duty to use reasonable care. Id. at 389. In Hanna, the defendants hosted a party, mainly in their basement, for their son's birthday, which approximately thirty teenagers attended. Id. at 388. One of the boys at the party sustained injuries during a fight. Id. at 388, 390. The parents of the injured boy sued the defendants and asserted that they negligently supervised the guests. Id. at 389. We concluded that "the duty of the person conducting [an] activity [on his or her premises], such as parents sponsoring a party for their son, is 'simply to use reasonable

care in all the circumstances.'" Ibid. (quoting Cropanese v. Martinez, 35 N.J. Super. 118, 122 (App. Div. 1955)).

Here, the activity involved swinging at the piñata at the birthday party that John hosted in his backyard. Glenn initially used a wiffle-ball bat. Then he used the thin metal pole – allegedly handed to him by John – which plaintiff argues was not intended for that purpose. As Glenn swung at the piñata multiple times, the pole began failing by bending more and more. His repeated striking of the piñata finally snapped the pole, causing it to helicopter towards plaintiff. Plaintiff argues that John failed to use reasonable care by protecting her from the activity, such as by stopping Glenn from swinging at the piñata. Plaintiff sustained injuries solely because of the activity of striking the pole against the piñata – not because of a static dangerous condition of the property itself.

We reject John's argument that the piñata set-up constituted an artificial dangerous condition warranting a 5.20F(4) charge. Hanging a piñata from a tree is not the type of artificial dangerous condition generally contemplated by our case law. Our courts have distinguished naturally occurring dangerous conditions from artificial dangerous conditions mostly in the attractive nuisance or trespasser contexts. See, e.g., Scannavino v. Walsh, 445 N.J. Super. 162, 168 (App. Div. 2016) (indicating that shrubbery that was planted

and did not naturally grow was considered "artificial"); <u>Wytupeck v. Camden</u>, 25 N.J. 450, 463-64 (1957) (stating that an electrical transformer was not a "natural" condition on the land).

We see no legal support for John's contention that the piñata was an "apparatus" that rendered it a dangerous artificial condition. The <u>Restatement (Second) of Torts</u> makes a distinction between "activities" and "conditions."

> A possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his <u>activities</u> with reasonable care for their safety if, but only if, he should expect that they will not discover or realize the danger, or will fail to protect themselves against it.
>
> [<u>Restatement (Second) of Torts</u>: Activities Dangerous to Invitees § 341A (Am. Law Inst. 1979) (emphasis added).]
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a <u>condition</u> on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

[Restatement (Second) of Torts: Dangerous Conditions Known to or Discoverable by Possessor § 343 (Am. Law Inst. 1979) (emphasis added).[1]]

Moreover, the set-up of the piñata had nothing to do with the cause of plaintiff's injuries. She stood on a deck in the backyard – several feet away from the piñata. We might conclude otherwise had the piñata apparatus fallen on plaintiff – prior to or during Glenn swinging the pole. In that hypothetical situation, the set-up design of the piñata might arguably be considered an artificial dangerous condition. But there is no evidence that the piñata was erected negligently. We must draw the distinction between cases that involve injuries sustained due to physical dangerous conditions on the land – irrespective of whether the condition is natural or artificial – and ones, like this, which purely involve an injury caused by an activity that the host conducted or sponsored on his land.

This court has explained that the term "dangerous condition" refers to "physical conditions of the property itself and not to activities conducted on the property." Roe v. N.J. Transit Rail Operations, Inc., 317 N.J. Super. 72, 79

---

[1] In Scannavino, 445 N.J. Super. at 172-73, we recognized that the Court has yet to adopt the Restatement (Third) of Torts. We note, however, that Restatement (Third) of Torts: General Duty of Land Possessors § 51 (Am. Law Inst. 2012) also draws a distinction between "conduct" by the land possessor and "conditions" on the land. (Emphasis added).

(App. Div. 1998). "It is well-settled that a dangerous condition of property may be found to exist when an unreasonable risk of harm is created by the combination of a defect in the property itself and the acts of third parties." Ibid. But this would require a combination of a defect in the property itself and a third party's action. Such is not the case here. Instead, the dangerous activity that caused plaintiff's injury was an activity conducted by a person on the land. In that context, "the social guest upon real property could recover for negligence in affirmative acts or conduct of the host, as distinguished from the condition of the premises themselves." Cohen v. Kaminetsky, 36 N.J. 276, 279 (1961).

Over the objection by plaintiff's counsel, the judge instructed the jury on the general social guest standard of care, as if plaintiff suffered an injury due to a dangerous condition that existed on John's property. But, again, there was no evidence whatsoever that the physical condition of the property itself had anything to do with the injury. The judge then instructed the jury on the standard of care as if the activity caused the injury.

These instructions contradicted each other. After all, the charge applicable to injuries sustained due to activities on property is an exception to the general social-guest charge. In this case, the idea was not to give both charges simultaneously, especially because plaintiff never alleged – and there

is no evidence in the record to suggest – that any kind of dangerous condition existed on the property.

Had the jury received the correct charge, they would have focused solely on whether John failed to use reasonable care under the circumstances. The charge as given, however, also required the jury to evaluate a non-existent and unalleged dangerous physical condition. It is probable that giving both charges confused the jury, required that the jury apply different standards of care, and produced an unfair outcome.

Jury charges are essential to a fair trial. Velazquez v. Portadin, 163 N.J. 677, 688 (2000). "Our law has long recognized the critical importance of accurate and precise instructions to the jury." Washington v. Perez, 219 N.J. 338, 350 (2014). Without a proper jury charge, a jury will not have a proper road map to guide them in their deliberations. Das v. Thani, 171 N.J. 518, 527 (2002).

We recognize that not all errors in a jury charge inexorably require a new trial. We must consider the charge as a whole, whether counsel voiced any contemporaneous objection, see Rule 1:7-2, and the likelihood that the flaw was so serious that it was likely to have produced an unfair outcome. Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002). The jury charge as given – both for a non-existent dangerous condition on the land and for an activity on

the property – was contradictory and misleading, creating the capability to confuse the jury as to the central issue in the case, which is determinative to a finding of liability. Because of this, the judge erred by simultaneously giving these charges, and should have only provided the jury with Exception (2) of the 5.20F(4) charge.

## II.

We now turn to a substantial evidentiary error, which permitted several witnesses to give subjective lay opinion testimony. Plaintiff contends that the judge erroneously allowed these witnesses to testify as to their opinions regarding the incident's foreseeability. The judge stated that he would permit the witnesses to testify as to their subjective opinions regarding using the metal pole to strike the piñata, but barred counsel from specifically using the word "foreseeable" when questioning the witnesses.

Glenn and other witnesses, however, testified that the incident was essentially unforeseeable. Glenn testified that what he was doing was not dangerous and that he had no concerns using the metal pole. An eyewitness to the incident opined that he had no safety concerns as he watched Glenn repeatedly strike the piñata with the metal pole, even as he observed the pole bend. Another person who watched Glenn use the pole testified that he believed Glenn was not engaged in a dangerous activity, and that after he

12

observed the pole bending, he subjectively "never thought [the pole] would snap." This testimony – at a minimum – expressed their collective and individual opinions that the incident was unforeseeable. The defense then used plaintiff's deposition testimony on the subject of whether she thought the incident was foreseeable.

In accordance with Model Jury Charges (Civil), 5:10B, "Foreseeability (As Affecting Negligence)" (approved before 1984), the judge charged the jury on foreseeability, which obviously does not require the jury to address the subjective beliefs of these eyewitnesses to the incident. Rather, under this model charge, the jury is required to use an objective standard. As to negligence, foreseeability, and proximate cause, the judge instructed the jury:

> [I]f an ordinary person[,] under [similar] circumstances . . . and by using ordinary care could have foreseen the result that is – that some injury or harm or damage would probably occur and either would not have acted or[,] if he did act[,] would have taken precaution to avoid the result, [then the performance of the act or the failure to take such precautions would constitute negligence.]
>
> . . . .
>
> . . . You must also find that some harm [to plaintiff] must have been foreseeable. For the harm to be foreseeable, it is not necessary that the precise harm that occurred here was foreseeable by either or both defendants, but the question is could a reasonable person have anticipated the risk that his conduct or omission could cause some harm to a guest.

In other words, if some harm from a particular defendant's conduct was within the realm of reasonable foreseeability, then the harm is considered foreseeable. But if the risk of harm was so remote [as] not to be in the realm of reasonable foreseeability, you [must] find no proximate cause.

[Emphasis added.]

The improper subjective opinion testimony about whether the activity was dangerous or whether the pole would snap – which plaintiff's counsel sought to exclude in an in limine motion – went to the heart of defendants' negligence and whether the incident was objectively foreseeable. Such a determination is for the jury to decide using the ordinary reasonable person standard. Instead, the jury might have determined foreseeability by weighing subjective opinion testimony from at least three witnesses about whether those witnesses believed it was unlikely that the pole would snap.

We recognize that "[e]videntiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). "Under this standard, 'an appellate court should not substitute its own judgment for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Hanisko v. Billy

Casper Golf Mgmt., Inc., 437 N.J. Super. 349, 362 (App. Div. 2014) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

We conclude that the judge abused his discretion by permitting the subjective opinion testimony. It was irrelevant, conflicted with the charge on foreseeability, and violated N.J.R.E. 701 (stating that a lay witness may testify "in the form of opinions or inferences . . . if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue"). The testimony that swinging the metal pole was not dangerous – especially the witnesses' subjective belief that the pole would not snap after Glenn bent the pole by repeatedly striking the piñata – would not assist the jury in determining whether an ordinary reasonable person could have objectively foreseen the incident. If anything, that evidence, especially considered together with the summations by defendants' counsel, most likely led to the jury's finding of no negligence and that the incident was unforeseeable.

Thus, we reverse as to Glenn because of this improper testimony regarding foreseeability.

## III.

On John's cross-appeal, he argues that a prior judge erred by denying his summary judgment motion. If we agree with plaintiff's contentions that fact

15

issues precluded summary judgment, and that the judge erred by giving a flawed jury charge, then John argues that the trial judge committed additional error by not applying the law of the case doctrine to the prior judge's rationale for denying summary judgment. As to this last point, John contends that if plaintiff is granted a new trial, the question of his negligence should be limited to whether he handed Glenn the pole, as the judge who denied his dispositive motion seemed to suggest.

On his cross-appeal, we conclude that John's arguments are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E). We add the following brief comments.

Fact issues defeated summary judgment to John. And the prior judge's reasons for denying John's summary judgment motion are not binding on the trial judge. John's prior motion was for summary judgment, not to limit plaintiff's trial theory of liability. Such an application would have been denied because plaintiff's theory of liability – as the evidence at trial showed – was that John failed to use reasonable care by, at a minimum, not only giving Glenn the thin hollow metal pole to strike the piñata, but also by failing to supervise the activity itself, especially when the pole began to bend. The only ruling the earlier judge made was to deny summary judgment to John. The earlier judge's reasons for denying summary judgment do not bind the trial

A-1417-16T4

judge. Plaintiff's liability theory against John at trial – and the additional evidence adduced at trial – went beyond merely handing a pole to Glenn. Moreover, denial of summary judgment preserves the issue for trial. See, e.g., Blunt v. Klapproth, 309 N.J. Super. 493, 504 (App. Div. 1998) (indicating that a denial of summary judgment "preserves rather than resolves issues; therefore, later reconsideration of matters implicated in the motion, including the reasons in support of the denial, are not precluded").

The law of the case doctrine generally prohibits a second judge, in the absence of additional developments or proofs, from differing with an earlier ruling. The doctrine is a non-binding rule intended to prevent re-litigation of a previously resolved issue. Lombardi v. Masso, 207 N.J. 517, 538 (2011). "A hallmark of the law of the case doctrine is its discretionary nature, calling upon the deciding judge to balance the value of judicial deference for the rulings of a coordinate judge against those factors that bear on the pursuit of justice and, particularly, the search for truth." Little v. KIA Motors Am., Inc., 425 N.J. Super. 82, 92 (App. Div. 2012) (citations and internal quotation marks omitted). The trial judge did not abuse his discretion by rejecting John's request to apply the doctrine.

Reversed in part; affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1417-16T4