**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1083-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRYAN T. ARLINE, a/k/a
DWAYNE BROWN, and
DWAYNE HUGHES,

     Defendant-Appellant.

_____

Submitted October 23, 2018 – Decided November 20, 2018

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 14-10-1166, 15-06-0752, 15-06-0756, 15-06-0757.

Joseph E. Krakora, Public Defender, attorney for appellant (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Bryan Arline appeals from his convictions and sentences entered pursuant to a plea agreement. He also challenges the denial of his motion for a Franks[1] hearing. We affirm.

I.

In May 2014, the New Brunswick Police Department received calls from an anonymous concerned citizen stating cocaine, heroin, and marijuana were being sold out of the second-floor apartment of a residence located on Plum Street in New Brunswick. On the morning of May 5, 2014, Detective Joshua Alexander set up surveillance to verify the information from the caller.

Thereafter, the Anti-Crime unit was independently contacted by a "past reliable confidential informant" (the CI) about drugs being sold from the same apartment. Detective Alexander spoke to the CI who confirmed drugs were actively being sold from the apartment. The CI claimed to have witnessed defendant distributing cocaine and heroin in the apartment. The CI then conducted a total of three controlled buys at the apartment, one of which involved defendant.

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

A-1083-17T1

On May 14, 2014, Detective Alexander obtained a search warrant for the apartment and defendant's person. The next day, after observing additional suspicious activity, the officers approached defendant on the street to execute the warrant. Defendant fled from the officers on a bicycle. The officers saw defendant throw items, later recovered and found to be thirty-eight decks of heroin and $30 cash, from his pocket before the officers apprehended him.

After defendant was apprehended, the apartment was searched. The search uncovered $1,685.75 in cash; several bags of cocaine; numerous empty heroin decks; plus scales and other illicit drug packaging paraphernalia.

A Middlesex County Grand Jury returned Indictment Number 14-10-1166, charging defendant with third-degree conspiracy to distribute a controlled dangerous substance (CDS), N.J.S.A. 2C:35-5 and N.J.S.A. 2C:5-2 (count one); two counts of third-degree unlawful possession of CDS, N.J.S.A. 2C:35-10(a)(1) (counts two and five); two counts of third-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (counts three and six); two counts of third-degree possession with intent to distribute CDS on or near school property, N.J.S.A. 2C:35-5(a) and N.J.S.A. 2C:35-7 (counts four and seven); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count eight).

Between November 20, 2014 and January 20, 2015, while defendant was out on bail, he broke into five homes in Edison and stole jewelry and cash. He also caused damage to the door and door frame of a sixth residence while attempting to gain access to it.

On February 11, 2015, police went to defendant's girlfriend's residence to arrest him on the burglary charges. Defendant jumped out of a second-story window in an attempt to avoid apprehension. However, his attempt to flee was unsuccessful and he was found in possession of heroin when apprehended.

A Middlesex County Grand Jury returned three additional indictments against defendant. Indictment Numbers 15-06-752 and 15-06-756 are related to the theft offenses. The charges in Indictment Number 15-06-757 stem from defendant's conduct incident to his arrest on February 11, 2015.

Indictment Number 15-06-752 charged defendant with two counts of third-degree burglary, N.J.S.A. 2C:18-2(a)(1) (counts one and five); two counts of third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (counts two and six); third-degree attempted burglary, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:18-2(a)(1) (count three); and fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1) (count four).

A-1083-17T1

Indictment Number 15-06-756 charged defendant with three counts of third-degree burglary, N.J.S.A. 2C:18-2(a)(1) (counts one, three, and five) and three counts of third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (counts two, four, and six).

Indictment Number 15-06-757 charged defendant with third-degree attempted burglary, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:18-2(a)(1) (count one); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count two); third-degree unlawful possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count three); and third-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count four).

Defendant moved for discovery relating to the CI. Following the denial of that motion, defendant moved for a Franks hearing, challenging the veracity of the search warrant affidavit. The trial court issued an order and written opinion denying the motion.

Defendant subsequently entered into a plea agreement encompassing all four indictments. Specifically, defendant pled guilty to count seven of Indictment No. 14-410-1166; counts one, four, and five of Indictment No. 15-06-752; counts one, three and five of Indictment No. 15-06-756; and counts two and three of Indictment No. 15-06-757; in exchange for a recommended

A-1083-17T1

aggregate ten-year prison term subject to a five-year period of parole ineligibility, with the remaining charges to be dismissed at sentencing. Defendant reserved the right to appeal the denial of his motion for a <u>Franks</u> hearing.

The sentencing judge found aggravating factors three (risk defendant will commit another offense); five (substantial likelihood defendant is involved in organized criminal activity); six (extent of the defendant's prior criminal record and seriousness of the offenses of which he has been convicted); nine (need for deterrence); and eleven (imposition of a fine without also imposing a term of imprisonment would be perceived as part of the cost of doing business). N.J.S.A. 2C:44-1(a)(3), (5), (6), (9), and (11).

The trial court also found mitigating factor six (defendant has or will compensate the victim of his conduct for the damage or injury sustained), N.J.S.A. 2C:44-1(b)(6), applicable to the burglaries, and afforded it "minimal weight." The court noted defendant's "extremely limited and sporadic work history." The court also noted defendant owed more than $20,000 in child support arrears. Thus, the court was "doubtful" defendant would ever pay restitution since child support would be the priority.

A-1083-17T1

The court sentenced defendant as follows in accordance with the plea agreement: on Indictment No. 14-10-1166, a five-year term subject to a thirty-month period of parole ineligibility and a $1000 fine on count seven; on Indictment No. 15-06-752, a five-year term on count one, an eighteen-month term on count four, a five-year term on count five, and a total of $15,500 in restitution; on Indictment 15-10-756, a five-year term subject to a thirty-month period of parole ineligibility each on counts one, three and five, and a total of $4,203.72 restitution; on Indictment 15-10-757, an eighteen-month term on count two and a three-year term on count three. The remaining charges were dismissed.

All of the sentences on the 2015 indictments run concurrent to each other but consecutive to the sentence on the 2014 indictment. Additionally, the sentence on the 2014 indictment was imposed concurrent to a prison sentence defendant was already serving on an unrelated indictment. This yielded an aggregate ten-year sentence subject to a five-year period of parole ineligibility. The court also imposed appropriate penalties and assessments. This appeal followed.

Defendant raises the following arguments on appeal:

> POINT I: THE MOTION COURT ERRED IN DENYING A <u>FRANKS</u> HEARING AS TO THE

A-1083-17T1

VALIDITY OF THE WARRANT PURSUANT TO WHICH THE DEFENDANT WAS SEARCHED AND ARRESTED. U.S. CONST., AMENDS. IV, XIV; N.J. CONST. (1947), ART. 1, PARS. 7, 10.

A. The Motion Court Erred In Denying An Evidentiary Hearing Pursuant to the Franks Standard.

B. This Court Should Adopt The Principles Of State v. Casal, 699 P.2d 1234 (Wash. 1985), Which Allow For In-Camera Hearings On A Motion To Disclose The Identity Of The Confidential Informant, And Remand For Reconsideration. (Not Raised Below).

POINT II: THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE, NECESSITATING REDUCTION.

## II.

Certain well-established principles guide our analysis. Although we normally grant deference to the findings of fact made by a trial judge in connection with a motion to suppress, there was no evidentiary hearing in this case. State v. Elders, 192 N.J. 224, 243-44 (2007). Instead, the judge relied on the contents of the search warrant affidavit. A reviewing court "may only consider whether the motion to suppress was properly decided based on the evidence presented at that time." State v. Gibson, 318 N.J. Super. 1, 9 (App. Div. 1999) (quoting State v. Jordan, 115 N.J. Super. 73, 76 (App. Div. 1971)).

8

"A trial court's interpretation of the law . . . and the consequences that flow from established facts are not entitled to any special deference." State v. Gamble, 218 N.J. 412, 425 (2014) (citing State v. Gandhi, 201 N.J. 161, 176 (2010); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). A trial court's legal conclusions are reviewed de novo. Ibid. (citing Gandhi, 201 N.J. at 176).

Defendant first challenges the denial of his motion for a Franks hearing. We review a trial judge's ruling regarding the need for an evidentiary hearing for abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009). We do not substitute our "own judgment for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted." State v. Brown, 170 N.J. 138, 147 (2001) (citations omitted).

A reviewing court gives substantial deference to a judge's determination that probable cause existed to issue a search warrant. State v. Mosner, 407 N.J. Super. 40, 61 (App. Div. 2009). "A search warrant is presumed to be valid, and defendant bears the burden of demonstrating that the warrant was issued without probable cause[.]" Id. at 61 (alteration in original) (quoting State v. Evers, 175 N.J. 355, 381 (2003)). Probable cause may be based upon information received from informants, so long as there is "substantial evidence in the record to support

the informant's statements." State v. Keyes, 184 N.J. 541, 555 (2005). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" Id. at 554 (quoting State v. Jones, 179 N.J. 377, 389 (2004)).

For that reason, a defendant is only entitled to a Franks evidentiary hearing to challenge the veracity of a warrant affidavit when he "makes a substantial preliminary showing" of either "material misstatements" or "material omissions" in a search warrant affidavit. State v. Marshall, 148 N.J. 89, 193 (1997); State v. Howery, 80 N.J. 563, 566 (1979). A misstatement is material if the warrant affidavit "no longer contains facts sufficient to establish probable cause" in its absence. Howery, 80 N.J. at 568 (citing Franks, 438 U.S. at 171). Similarly, an omission is material if the issuing judge would likely not have granted the warrant had he or she been apprised of the omitted information. State v. Sheehan, 217 N.J. Super. 20, 25 (App. Div. 1987).

The defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross examine." Broom-Smith, 406 N.J. Super. at 240 (quoting Franks, 438 U.S. at 171). Defendant must identify "with specificity the portions of the warrant that are claimed to be untrue" and support the allegations with "an offer of proof including reliable statements by

witnesses, [which] must be proved by a preponderance of the evidence." Howery, 80 N.J. at 567-68 (citations omitted).

The limitations imposed by Franks are not insignificant. Id. at 567. The burden placed on the defendant is onerous because "a Franks hearing is not directed at picking apart minor technical problems with a warrant application," but rather, "it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents." Broom-Smith, 406 N.J. Super. at 240. A Franks hearing should not be used as a "fishing expedition" or an attempt to learn the identity of a confidential informant. Id. at 239.

Defendant contends the trial court erred in denying a Franks hearing because the affidavit submitted in support of the warrant was insufficient because it failed to establish the informant was in possession of CDS after the purported purchase. During oral argument on the motion, the defense referred to the warrant affidavit as "a pro forma cut and paste affidavit" and predicated the entire argument on one sentence that appeared in each of the three paragraphs describing the three controlled buys. The specific sentence appears in the context of the affidavit as follows:

> Controlled Purchase #3:
> During the second week in the month of May 2014, the third controlled buy of narcotics was made from the residence [] Plum Street (apt#2). Prior to the controlled

buy, the [CI] was searched out of the area for any possible contraband with negative results. [The CI] was then given a quantity of money to purchase a quantity of heroin from [] Plum Street. The [CI] was followed to [] Plum Street by the undersigned in an unmarked police surveillance vehicle. The [CI] was never out of my view. Once the [CI] arrived at [] Plum Street, he/she was met on the front porch of [defendant's] residence . . . . After a brief conversation with [defendant], the [CI] and [defendant] went inside the residence. The [CI] was inside the residence for a short period of time (less than five minutes) before exiting the front door of the residence. The [CI] immediately left the area and was followed to a pre-determined meet location to relinquish the quantity of heroin [the CI] purchased to the undersigned. The [CI] was once again searched for any possible contraband with negative results. The [CI] stated that he/she purchased the quantity of heroin from [defendant] inside of [] Plum Street (apt #2). The [CI] stated that while inside the residence she/he handed the currency used for the buy to [defendant] and [defendant] handed her/him a quantity of heroin. The heroin that was purchased was consistent with the amount of money used for the buy. The heroin was later field tested and tested positive for heroin content.

[Emphasis added.]

Defendant contends the phrase "negative results" indicates there was no buy made. We are unpersuaded by this argument.

Defendant's assertion that "the noted language . . . fails to establish [the CI] was in possession of drugs" can only be reached by deliberately misconstruing the affidavit. As the trial court noted, the interpretation sought

12

by defendant "doesn't make any sense[,]" especially since the next four sentences in the paragraph unambiguously discuss the heroin the CI bought from defendant. Instead, as stated by the trial court, the logical interpretation of the affidavit is "that the [CI] relinquished the quantity of heroin and subsequently was searched again for further contraband which yielded negative results."[2]

We further conclude the sentence in question is not material. Contrary to defendant's contentions, the remaining contents of the affidavit are not "too generalized or ordinary" to establish probable cause for the issuance of the search warrant.

"Probable cause for the issuance of a search warrant requires a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Chippero, 201 N.J. 14, 28 (2009) (citation omitted). "A finding of probable cause may rest upon evidence not competent at a criminal trial [including h]earsay . . . so long as there is something coupled with the hearsay to give it reasonable credit [and] the appearance of trustworthiness." State v.

---

[2] It appears to be standard procedure for the police to search the informant both before and after the controlled buy. See e.g., Jones, 179 N.J. at 383-84; State v. Sullivan, 169 N.J. 204, 208 (2001). The dual search is undertaken to ensure any contraband surrendered by the informant to the police was, in fact, obtained from the defendant, and also, that the informant has not surreptitiously held back a portion of the contraband purchased with tax payer dollars for their own use.

A-1083-17T1

Kasabucki, 52 N.J. 110, 116-17 (1968) (citations omitted). Information received from a confidential informant is also "a valid basis for a court to find probable cause and issue a search warrant [as long as there is other] evidence in the record to support the informant's statements." Keyes, 184 N.J. at 555 (citations omitted). "[A] controlled buy 'typically will be persuasive evidence in establishing probable cause.'" Jones, 179 N.J. at 392 (quoting Sullivan, 169 N.J. at 217).

Here, the trial court noted:

> The affidavit contain[ed] information that Detective Alexander surveilled [] Plum Street and observed [the same individual] drive to the residence, remain inside for a few minutes, and then drive away on multiple occasions. Detective Alexander also stated that within the last seven days of surveillance, he observed several suspected drug users and buyers approach the residence, remain inside for a short period of time, and then leave the residence. A concerned citizen and a confidential informant also gave detailed tips to the Anti-Crime Unit that narcotics transactions were being conducted at the residence.

As a result, the trial court found even if "the language in the affidavit regarding the controlled buys amounted to a deliberate falsehood," defendant's argument still failed because "the observations made by Detective Alexander and the information provided by the concerned citizen and the [CI]" would have been enough to establish probable cause for the issuance of a warrant.

14

It is well settled that "when the adequacy of the facts offered to show probable cause is challenged after a search made pursuant to a warrant, and their adequacy appears to be marginal, the doubt should ordinarily be resolved by sustaining the search." Jones, 179 N.J. at 388-89 (quoting Kasabucki, 52 N.J. at 116).

Additionally, defendant's motion was not supported by any evidence of intentional wrongdoing by the police officer who swore out the warrant affidavit. Defendant acknowledges an offer of proof was not made to the trial court.

Defendant did not make a substantial preliminary showing of either a material misstatement or material omission in the search warrant affidavit. We discern no abuse of discretion by the trial court.

### III.

For the first time on appeal, defendant argues this court should follow the Washington Supreme Court's decision in State v. Casal, 699 P.2d 1234 (Wash. 1985). We decline to do so for several reasons. First, the decision in Casal is

15

not binding precedent.[3] Second, <u>Casal</u> is in direct conflict with our Supreme Court's holding in <u>State v. Milligan</u>, 71 N.J. 373 (1976), which is binding precedent.[4] To the extent defendant's <u>Casal</u> argument is an assertion that the denial of his request for an in camera hearing as to the identity of the CI was error, we disagree.

The informer's privilege against disclosure of their identity is well-established and "considered essential to effective enforcement of the criminal code," particularly narcotics laws. <u>Milligan</u>, 71 N.J. at 381, 381 n.3, 383. "Without a strong showing of need, courts will generally deny a request for disclosure." <u>State v. Florez</u>, 134 N.J. 570, 578 (1994). In fact, N.J.R.E. 516 "provides that a witness need not provide the identity of an informant unless the identity of that person has already been otherwise disclosed or 'disclosure of his identity is essential to assure a fair determination of the issues.'" <u>Ibid.</u>

---

[3] Out-of-state decisions are neither binding nor controlling on a New Jersey court. <u>See, e.g.</u>, <u>In re Advisory Op. No. 01-2008</u>, 201 N.J. 254, 268 (2010); <u>Marx v. Friendly Ice Cream Corp.</u>, 380 N.J. Super. 302, 310 (App. Div. 2005).

[4] Decisions of the Supreme Court bind the Appellate Division and all trial courts. <u>See, e.g.</u>, <u>Am. Civil Liberties v. Hendricks</u>, 445 N.J. Super. 452, 477 (App. Div.), <u>certif. granted</u>, 228 N.J. 440 (2016); <u>Scannavino v. Walsh</u>, 445 N.J. Super. 162, 172 (App. Div. 2016).

The purpose of the privilege is twofold: "to protect the safety of the informant and to encourage the process of informing." State v. Sessoms, 413 N.J. Super. 338, 343 (App. Div. 2010). The privilege is in fact intended "to protect the public interest in a continuous flow of information to law enforcement officials." Grodjesk v. Faghani, 104 N.J. 89, 97 (1986). In narcotics cases, protecting the identities of confidential informants is vital because "informants are an important, indeed indispensable, part of the arsenal that law-enforcement forces bring to bear against drug crimes." Florez, 134 N.J. at 582; see also Milligan, 71 N.J. at 381 n.3.

Even an in camera hearing "will effectively reduce cooperation with the police and defeat the purposes which underlie the informer's privilege." Milligan, 71 N.J. at 393 n.12. Thus, when deciding whether to grant a request for an in camera hearing, the motion court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense[,] . . . taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 384 (quoting Roviaro, 353 U.S. at 62).

Defendant contends the denial of his motion for discovery as to the [CI] "was a virtual Catch-22, in which he was unable to advance an alternative theory

17

of the alleged events because he was denied the means to learn of the actual occurrences."  We review the denial of an order requesting disclosure of a confidential informant's identity using an abuse of discretion standard, that is, "whether the trial court abused its discretion after weighing the competing considerations of the balancing test."  Milligan, 71 N.J. at 384.

First, we note defendant's failure to provide this court with an adequate record to review the motion court's decision to deny his motion for an in camera hearing as to the identity of the CI hinders our review.  Johnson v. Schragger, 340 N.J. Super. 84, 87 n.3 (App. Div. 2001).  We remind defendant

> Rule 2:6-1(a)(1)(C) requires an appellant to include in the appendix "the judgment, order or determination appealed from or sought to be reviewed or enforced . . . ."  Further, our Court Rules require that "if a verbatim record was made of the proceedings . . . from which the appeal is taken, the appellant shall, no later than the time of the filing and service of the notice of appeal, serve a request for preparation of an original and copy of the transcript . . . ."  R. 2:5-3(a).  If no verbatim record of the proceedings exists, "the appellant shall [provide] a statement of the evidence and proceedings prepared from the best available sources, including the appellant's recollection."  R. 2:5-3(f).
>
> [Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 55 (2004).]

We also note we are not "obliged to attempt review of an issue when the relevant portions of the record are not included."  Cmty Hosp. v. Blume Goldfaden, 381

N.J. Super. 119, 127 (App. Div. 2005). See also State v. Cordero, 438 N.J. Super. 472, 489 (App. Div. 2014).

Defendant has not provided this court with a transcript of the motion court proceedings or a statement compliant with Rule 2:5-3. Nor has he included the motion judge's order or statement of reasons in his appendix. In fact, there is only one reference to the motion court's denial of defendant's motion for discovery of the CI's identity in defendant's brief and appendix.

Thus, to the extent we are able to evaluate defendant's claim, we note its similarity to Broom-Smith. In Broom-Smith, law enforcement officers received information from a confidential informant that the defendant was dealing drugs out of his residence. 406 N.J. Super. at 231-32. As a result, the

> officers arranged for the informant to make a 'controlled buy' of drugs from defendant. The purchase was structured in such a way that the officers could be certain that the informant did not possess any drugs prior to the purchase from defendant, and they kept the informant under constant visual surveillance before, during and after the purchase . . . . Once the purchase was complete, the informant gave the drugs to the investigators, who field-tested them and found them to be cocaine.
>
> [Id. at 231.]

Based on that information, search warrants were applied for, obtained, and executed, resulting in the seizure of a large quantity of cocaine found in

defendant's house. The defendant challenged the warrant application and made multiple discovery requests. Id. at 232-35. All of these requests were denied because the trial court "concluded th[e] defendant's broad demand for all documents created by law enforcement prior to the warrant application was a veiled attempt to learn the identity of the confidential informant." Id. at 240.

On appeal, the defendant claimed he sought information concerning the investigation prior to the warrant application in order to verify the information contained in the search warrant affidavit. He contended he needed that information to be able to possibly attack the validity of the warrant at a Franks hearing. Ibid. The panel affirmed the denial of discovery because "[n]othing in defendant's appellate brief suggests even a remote possibility that the discovery he sought would have enabled him to meet the Franks standard." Id. at 241.

Here too, the police arranged for the CI to make several controlled buys of CDS from defendant; the controlled buy was structured so that the police could be certain the CI did not possess any drugs prior to going into defendant's residence to purchase drugs; the CI was only out of the officers' sight while inside defendant's residence; and the CI relinquished contraband, which field-tested positive for heroin, to the police after being followed out of defendant's residence.

A-1083-17T1

Defendant's argument the denial of his discovery motion was a "virtual Catch-22, in which he was unable to advance an alternative theory of the alleged events because he was denied the means to learn of the actual occurrences" is also nearly identical to the argument advanced by the defendant in Broom-Smith that he needed his discovery request to be granted "to be able to possibly attack the validity of the warrant at a Franks hearing." Finally, as in Broom-Smith, there is nothing in defendant's deficient brief and appendix which suggests an in camera hearing would have enabled him to meet the Franks standard.

"[F]rivolous demands for information [or] unsubstantiated allegations of need" will not be enough to justify disclosure of a confidential informant's identity because "[s]omething more than speculation should be required of a defendant before the court overrules an informer's privilege of nondisclosure." Milligan, 71 N.J. at 393. Thus, to the limited extent we are able to review defendant's argument, we affirm.

IV.

Defendant asserts the trial court improperly weighed the aggravating and mitigating factors and his negotiated sentence is excessive. "Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). The sentence must be affirmed unless

(1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

[Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

The sentence imposed was pursuant to a plea agreement. "While the sentence imposed must be a lawful one, the court's decision to impose a sentence in accordance with the plea agreement should be given great respect, since a 'presumption of reasonableness . . . attaches to criminal sentences imposed on plea bargain defendants.'" State v. S.C., 289 N.J. Super. 61, 71 (App. Div. 1996) (alteration in original) (quoting State v. Sainz, 107 N.J. 283, 294 (1987)). If defendant had any objection to the recommended sentence, he should have raised it during the plea negotiations or before he was sentenced. State v. Thomas, 392 N.J. Super. 169, 186 (App. Div. 2007). Defendant received the recommended sentence. As such, he "cannot legitimately complain that the sentence was unexpected or that he received a sentence other than that for which he explicitly negotiated." Ibid. (quoting State v. Soto, 385 N.J. Super. 247, 255 (App. Div. 2006)).

Defendant contests aggravating factors five and eleven. He also argues the trial court should have applied mitigating factor eleven (imprisonment would entail excessive hardship on defendant or his dependents), N.J.S.A. 2C:44-1(b)(11). He does not dispute the applicability of aggravating factors three, six or nine, "given the extent of his prior record."

As to aggravating factor five, the court stated:

> I do find that aggravating factor five applies. There is a substantial likelihood [defendant] is involved in organized criminal activity, and this is based upon the fact that there is no evidence [defendant] was manufacturing the drugs that he was caught with, which leads to the inference that he was selling product that he obtained from another seller.

Aggravating factor five is appropriate even in the absence of a demonstration the defendant's criminal behavior was related to his participation or membership in an organized crime group, such as a gang, when the nature of the offense itself warrants its application. See State v. Velez, 229 N.J. Super. 305, 316 (App. Div. 1988), aff'd as modified, 119 N.J. 185 (1990) (determining that a fact-finding hearing was unnecessary after a drug distribution conviction because defendant was not manufacturing the drugs, and thus he had to be obtaining them from other sources); see also State v. Varona, 242 N.J. Super. 474, 491-92 (App. Div. 1990) (finding evidence on the record supported

23

applying aggravating factor five where defendant was convicted of conspiracy to distribute cocaine). We discern no error in finding aggravating factor five since defendant does not dispute he was not the manufacturer of the drugs he pled guilty to possessing with intent to distribute.

The defendant also asserts the court erred in applying aggravating factor eleven because under the circumstances of this case, a non-custodial sentence was not a possibility. The court stated:

> To the extent [defendant] seeks probation, which is argued by his counsel in her letter memorandum blaming his criminal history, past and present convictions on a drug addiction, the [c]ourt does need to balance that, but I find that probation is not enough in light of [defendant's criminal] history . . . and the fact that he has not been deterred.

Defendant is correct that aggravating factor eleven is not applicable unless the sentencing judge is balancing a noncustodial term as against a state prison sentence. State v. Dalziel, 182 N.J. 494, 503 (2005) (citation omitted). A sentencing court must impose a custodial prison sentence for a defendant convicted of possession with intent to distribute a CDS on or near school property. However, under the circumstances, we find the error harmless because the aggravating factors three, six, and nine clearly outweigh mitigating factor six, which only applied to the burglaries and was only given minimal weight.

A-1083-17T1

Defendant also argues the negotiated term of ten years in state prison with five years of parole ineligibility is excessive. We disagree. Defendant stipulates he was extended-term eligible under N.J.S.A. 2C:44-3(a) (persistent offender), N.J.S.A. 2C:43-6(f) (repeat drug offender), and N.J.S.A. 2C:44-5.1 (commission of specified crimes while on bail), rendering him subject to a period of parole ineligibility pursuant to N.J.S.A. 2C:43-7(c). His attorney was able to negotiate a favorable plea agreement, resulting in the dismissal of numerous charges and an aggregate sentence far shorter than his exposure. We discern no abuse of discretion by the trial court. Considering the crimes defendant pled guilty to together with his prior criminal record, defendant's sentence is not clearly unreasonable so as to shock the judicial conscience. See Roth, 95 N.J. at 364-65.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1083-17T1